[No. 3122.    Decided April 24, 1901.]

CHRISTIAN ANDERSON, *Appellant,* v. THE PROVIDENT LIFE
AND TRUST COMPANY *et al., Respondents.*

CREDITOR'S BILL — FRAUDULENT CONVEYANCES — ADEQUATE REMEDY
BY LAW.

The remedy by creditor's bill in equity to set aside fraudu-
lent conveyances and subject real estate to sale free from any
cloud occasioned by such conveyances is not abolished by the
enactment of statutes in aid of executions on judgments at law,
but the judgment creditor is entitled in such cases to maintain
proceedings on the equitable side of the court, whenever his com-
plaint shows that the relief which the law affords would not
be full and adequate.

Appeal from Superior Court, Pierce  County.—Hon.
THOMAS CARROLL, Judge.    Reversed.

*John A. Parker* and *John C. Stallcup,* for appellant.

*P. Tillinghast,* for respondents.

The opinion of the court was delivered by

ANDERS, J.—This is an action, in the nature of a cred-
itors' bill, to set aside certain conveyances alleged to have
been made in fraud of creditors, and to subject the real
estate described in the complaint to the payment of a judg-
ment.    Briefly stated, the facts, as alleged in the complaint,
are that John W. Sprague died on December 24, 1893, in
Pierce county, Washington, leaving a will which was pro-
bated on December 29, 1893, and by which Otis Sprague
and James R. Hayden were appointed executors; that at
the time of his death the said John W. Sprague was the
owner in fee of three certain parcels of real estate, all of
which are specifically described, situated in said Pierce
county, of the value of $300,000, and money and personal
property of the value of about $60,000, all of which money

and personal property has been applied by the executors in payment of debts and legacies, which debts and legacies together did not exceed the sum of $60,000; that the said Otis Sprague is a son of the said decedent, and to him was devised by the will an undivided one-fourth interest in and to all the real estate owned by the said John W. Sprague at the time of his death, and that the said Otis Sprague on the 24th day of December, 1893, became the owner in fee of an undivided one-fourth of all of said real estate; that the will provided that the real estate might be sold if necessary for the purpose of paying the debts of the testator; that on January 24, 1894, judgment was recovered by the Tacoma National Bank, in the superior court of Pierce county, against the said Otis Sprague for the sum of $4,730, which judgment upon its entry became a lien upon certain of the real property belonging to said Otis Sprague, and which is particularly described in the complaint, and that no transfer of the interest of said Otis Sprague in the property devised to him by the said decedent, or incumbrance thereon, had been made by him prior to the giving of said judgment and the existence of said judgment lien; that the judgment was duly assigned to the plaintiff on November 15, 1897, and that executions were issued thereon and returned wholly unsatisfied, and that no part of said judgment has been paid; that the executors on August 21, 1894, executed a deed to Charles Sprague, a son of the decedent, and one of the devisees named in the will, purporting to convey to him a portion of the real estate in question for the consideration of $120,-000, with the understanding between the said executors, the said Charles Sprague, and the defendant the Provident Life & Trust Company that Charles Sprague would execute to said company a mortgage on the premises for $55,-000, and turn the money so received over to the executors,

and then reconvey the estate so incumbered to said execu-
tors, and that the said agreement was accordingly carried
out and performed; that on September 5, 1895, upon a
similar agreement and understanding with the said Charles
Sprague and the Provident Life & Trust Company, said
executors executed a deed purporting to convey to said
Charles Sprague another portion of said real estate, ex-
pressing a consideration of $90,000, which real estate was
mortgaged by said grantee to said Provident Life & Trust
Company for $30,000, and then conveyed to said executors,
and that both of said deeds and mortgages were recorded
in the office of the county auditor of Pierce county; that
said executors had no right, power, or authority to incum-
ber said real estate, nor any of the real estate of the de-
ceased, or to mortgage the same; that Charles Sprague paid
no consideration for the premises described in said deeds;
that the defendant company took said mortgages from said
Charles Sprague with full knowledge of the facts, and con-
sented to and advised the doing of said acts, and that
the whole transaction was a fraudulent scheme to dispose
of Otis Sprague's interest in said premises, and thereby
to prevent the collection of plaintiff's judgment and defeat
the lien thereof; that the said grantors had no right or
authority, under the terms and provisions of the will, to
make said deeds, and the same were not made under the
order of court, or in the course of administration of said
estate, or pursuant to any power contained in the will, nor
for the purpose of settling the estate of the deceased, nor
under any order of distribution thereof; that the said sales
of real estate were not necessary to the payment of debts
of the estate or legacies, nor was any considerable portion
of the proceeds of said sales and mortgages used for such
purposes, and that the same were made for the purpose of
enabling the said Otis Sprague to defraud his creditors,

and particularly the plaintiff herein; that in pursuance of some subsequent secret arrangement, not disclosed on the county records and not known to the plaintiff, the property described in said two deeds and mortgages was, prior to the commencement of this action, turned over to the defendant Provident Life & Trust Company, and ever since has been, and now is, held by said company under a claim of full ownership thereof; that said premises are yielding a rental of about $700 per month, and the same is being collected by said company, and all right of lien by reason of plaintiff's judgment is denied by said defendant; that by reason of the said conveyances and the said mortgages and said secret arrangement, and the said claim of title to said premises and possession thereof by said defendant company, the plaintiff is obstructed in the enforcement of his lien and the payment of his judgment; that there is no property out of which to make payment of plaintiff's judgment, other than that covered by said deeds and mortgages, and described in the complaint herein; that the executors, and especially Otis Sprague, are insolvent and without property of any kind, except the premises claimed and possessed by the defendant Provident Life & Trust Company; that Otis Sprague has been insolvent ever since the rendition of plaintiff's judgment, and that execution was not issued on said judgment prior to the year 1895 because the executors had possession and control of said premises, and were entitled to one year's time within which to pay the debts and distribute the property of the estate; that at the time this action was commenced the said executors and the defendant Provident Life & Trust Company, with intent to further obstruct and defeat the collection of plaintiff's judgment, were colluding together to sell and convey the premises to an innocent purchaser, who, without knowledge

of the fraudulent designs and purposes thereby intended, might buy the premises believing that he would get a clear title thereto, because of certain provisions in the will empowering the executors to sell property of the estate for the payment of debts and legacies, in that a *lis pendens* was filed by plaintiff, giving notice of the commencement of this action, and describing the property involved and the lien claimed by plaintiff as set forth in his complaint; that subsequently to the return of the unsatisfied execution the plaintiff caused another execution to be issued and levied upon the property in controversy, and the same was advertised for sale by the sheriff, whereupon the defendant the Provident Life & Trust Company applied to the federal court for an injunction against this plaintiff, alleging that it was the absolute owner of the said real estate, and upon the prayer of said company an injunction was issued restraining the sheriff and this plaintiff from selling said property on said execution; that the said superior court had theretofore acquired jurisdiction over the subject-matter of this action and the parties thereto; that the said estate and the said executors are under the control of the said superior court, and subject to its orders, to the extent of administering their trust with just regard to the rights of all parties interested in the assets of said estate, the said federal court being without jurisdiction in said matters; that by reason of the conditions alleged the said one-fourth interest in said real estate will not sell for anything near its value, and but for a small portion of plaintiff's judgment, unless before such sale the lien of plaintiff is adjudged valid, and that if said lien be adjudged valid the said one-fourth of said premises will sell for much more than if sold under the present conditions; and that by reason of unpaid taxes, and the taxes accruing upon the said premises, and the depressed condition of values

of property in Tacoma, the said one-fourth interest will not sell for sufficient to fully pay plaintiff's judgment, interest, and costs, and it is necessary that one-fourth of the rents of said premises be brought into court and preserved for that purpose. To this complaint the Provident Life & Trust Company interposed a demurrer upon the ground that it failed to state facts sufficient to constitute a cause of action against said defendant, which demurrer was sustained by the court. The plaintiff elected to stand upon his complaint, and refused to further plead; and thereupon the court dismissed his action, and gave judgment against him for defendant's costs and disbursements. The plaintiff appeals.

The sole question for determination is, as we have seen, whether the complaint, upon its face, states facts sufficient to entitle the appellant to equitable relief. It is asserted in the brief of the appellant that the court below sustained the demurrer to the complaint for the reason that, in its opinion, creditors' bills have been abolished in this state by force of our statutes in aid of executions on judgments at law. This statement is disputed by the learned counsel for the respondent, who claims that the demurrer was sustained because it appeared from the allegations of the complaint that appellant had an adequate remedy at law, and therefore did not need the aid of equity. The record does not disclose upon which, if either, of these theories the learned court acted, but we are of the opinion that the judgment cannot be sustained upon either of the grounds suggested by counsel. This court has repeatedly entertained actions to set aside fraudulent conveyances, and subject property so conveyed to the satisfaction of judgments, and this is conceded by counsel for the respondents. Nor does the fact that a party may have a remedy at law necessarily preclude him from invoking the aid of

equity in cases of this character. If the legal remedy is inadequate to afford full relief, resort may be had to equity in proper cases. Indeed, it is a well-established principle that equity has concurrent jurisdiction with law over frauds, under statutes relative to fraudulent conveyances. Wait, Fraudulent Conveyances (3d ed.), § 51; Bump, Fraudulent Conveyances (4th ed.), § 530. And the creditor himself may select the forum in which the question of fraud shall be determined, or, in other words, he has the option to submit the determination of the question either to a court of law or a court of equity.

"But," says Mr. Bump, "the remedy most frequently used is a bill in equity, because a court of equity sifts the consciences of the parties and removes the cloud from the title. Fraud constitutes the most ancient foundation of its jurisdiction, and is a sufficient ground for its interposition. It may grant relief, although there is ample remedy at law; for no relief is adequate except that which removes the fraudulent title. The relief in equity is different and may be more beneficial than that given by the law." Bump, Fraudulent Conveyances (4th ed.), p. 532.

And in Wait on Fraudulent Conveyances it is stated that

"The existence of a remedy at law does not interfere with the right of a creditor to resort to a court of equity to secure a cancellation of a fraudulent conveyance, as an obstacle in the way of the full enforcement of a judgment, and a cloud on the title to the property sought to be reached . . . The creditors' bill, or a suit to clear the fraudulent transfer, is, for many reasons, entitled to preference as a means of relief. Should the creditor attempt to sell the disputed property arbitrarily under execution, bidders would be deterred from purchasing, lest they should buy a lawsuit; hence the market value of the land embraced in the covinous transfer is practically destroyed. Then the seizure of the property subjects the creditor to the peril incident to proving that the transfer

was fraudulent, and, in the event of failure to establish fraud, of paying damages for the unwarrantable interference, seizure, and sale." Wait, Fraudulent Conveyances (3d ed.), § 60.

In 5 Enc. Pl. & Pr. p. 402, the writer observes:

"The remedy of the judgment creditor by a sale under execution of the premises fraudulently conveyed does not affect the jurisdiction of equity, as the creditor has the right not only to have the property subjected to the payment of his judgment, but to have it done in such a manner that it will bring its fair market value."

And on page 392 of the same volume it is said that "the most common instance of a creditors' bill is where property legally liable to execution has been fraudulently conveyed or incumbered, so that, although the property might still be sold on execution, it would not sell for an adequate price, and a suit is brought to clear away such conveyance or incumbrance." The law as laid down by these text writers is in accordance with the overwhelming weight of authority. In fact, no decisions announcing a contrary doctrine have been cited by counsel, and we have observed none. In *Cornell v. Radway,* 22 Wis. 260, the court said:

"The existence of the [judgment] lien, without adequate remedy for enforcing it at law, by reason of the fraudulent or inequitable obstruction interposed by the defendant, is sufficient to give a court of equity jurisdiction."

And in *Zoll v. Soper,* 75 Mo. 460, which was an action to subject land to the payment of a judgment, it was held that, "while the creditor might have the land sold on execution, equity will not compel him to pursue that ruinous course." See, also, Freeman, Judgments (4th ed.), § 350; Pomeroy, Equity Jurisprudence (2d ed.), § 1415, and note; Black, Judgments, § 423; *Metzger v. Bur-*

*nett,* 5 Kan. App. 374 (47 Pac. 599); 4 Am. & Eng.
Enc. Law, 576; *O'Connell v. Taney,* 16 Colo. 353 (27
Pac. 888, 25 Am. St. Rep. 275). While it is true that
the appellant, if he had been permitted to do so, might have
sold the premises in controversy on execution in the first
instance, it is equally true, under the authorities above
cited, that he was not obliged to pursue that course. He
had the right, under the averments of the complaint, which
are admitted to be true by the demurrer, to proceed in
equity to have the obstructions in the way of execution
removed. We are convinced that the complaint, viewed
in the light of the authorities, states a cause of action; and
the judgment is therefore reversed, and the cause re-
manded, with directions to overrule the demurrer.

REAVIS, C. J., and FULLERTON and DUNBAR, JJ., con-
cur.