[No. 6498.   Decided March 29, 1907.]

R. K. BROWN, *Respondent*, v. E. A. BALDWIN *et al.,*
*Appellants*.[1]

APPEAL—REVIEW—HARMLESS ERROR.   Error in the admission of
evidence in an equity case triable *de novo* on appeal is harmless.

SAME—AMENDMENT OF COMPLAINT—CREDITOR'S SUIT—RETURN OF
NULLA BONA.   In an action by a judgment creditor to quiet title to
property conveyed by the debtor in fraud of creditors, findings for
plaintiff will not be reversed on appeal for failure to show an execu-
tion returned *nulla bona*, where the court found upon sufficient evi-
dence that the debtor had no other property; and the pleadings will
be considered amended in that respect.

[1]Reported in 89 Pac. 483.

QUIETING TITLE—PLEADING—WAIVER OF OBJECTIONS. An objection that an action to quiet title could not be maintained by one out of possession who failed to allege that the land was vacant and unoccupied, is waived by trial of the issue as to title, raised by answer asking that the title be quieted in the defendants, although a demurrer *ore tenus* was interposed at the trial.

ACTIONS—FORM—ABOLISHMENT OF DISTINCTIONS—QUIETING TITLE —CREDITOR'S SUIT—RELIEF. An action by a judgment creditor to quiet title, in which the complaint alleges a conveyance in fraud of creditors and the purchase of the property by plaintiff on execution sale, should not be dismissed for error in the form of action, in that the complaint failed to allege that the plaintiff was in possession or that the land was vacant and unoccupied, but alleged the defendants to be in possession by the receipt of rents; since the code abolishes all distinctions in the forms of action, and the court may give the relief sought where the facts stated show the party entitled thereto.

Appeal from a judgment of the superior court for Clallam county, Hatch, J., entered April 3, 1906, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action to quiet title. Affirmed.

*John H. Hall, James G. McClinton*, and *Chamberlain & Thomas*, for appellants.

*Trumbull & Trumbull*, for respondent.

DUNBAR, J.—In the spring of 1899, the respondent was the owner of a certificate of stock in the Union Savings & Loan Association, of the par value of $5,000. The association denied any liability upon the stock, and the respondent brought suit against the association and recovered a judgment for the face value of the same. Upon appeal this judgment was reduced to $2,547 and interest. In July, 1899, and after the respondent had threatened to bring the aforesaid suit, the defendant association made a deed to appellant Baldwin, purporting to convey to him, among other tracts of land, the tract which is the subject of this suit. Appellant Baldwin gave a mortgage for $3,500. On the 10th day of October, 1899, the defendant the Cooperative Investment Company was organized as a corporation under the laws of

the state of Oregon. On January 21, 1901, it is alleged that Baldwin paid the amount of his note for the purchase price of the Lake Crescent property, the subject of this controversy, and shortly thereafter the mortgage was satisfied by the Union Savings & Loan Association. On March 27, Baldwin and wife deeded the property to the defendant the Co-operative Investment Company. On March 6, 1901, execution was issued out of the superior court of Jefferson county to the sheriff of Clallam county on the judgment aforementioned. On April 8, 1901, the property was sold by the sheriff to plaintiff, for the sum of $1,253. This action was afterwards commenced to quiet title to the Lake Crescent property, the complaint alleging that the deed made by the defendant the Union Savings & Loan Association, and the deed by Baldwin to defendant the Cooperative Investment Company, were without consideration, fraudulent and void. The defendants answered, denying the affirmative matter in the complaint, and asking to have declared good their title to the land which was the subject of the suit.

The findings of fact are voluminous, the court setting forth in minutiæ the history of the transactions. But without setting them all forth here, it is sufficient to say that, among other things, the findings are to the effect that the Union Savings & Loan Association had entered into an unlawful and fraudulent conspiracy with the defendants Billings, McArdle, and Baldwin, to hinder, delay and defraud the plaintiff in the collection of his demand against the said Union Savings & Loan Association, and that what purported to be a deed of conveyance from the association to Baldwin was without consideration; that the same was voluntarily made, in secret trust, for the benefit of the Union Savings & Loan Association and its officers, for the purpose of hindering, delaying, and defrauding the creditors of the Union Savings & Loan Association and more especially this plaintiff; that among all the property so fraudulently conveyed, the land in Clallam county which is the subject of this suit

was so conveyed (describing the said land), and that all the subsequent proceedings in relation to the conveyances of this land were fraudulent and void and the result of conspiracy; that the Cooperative Investment Company was organized by Billings, McArdle, and Baldwin, who were officers at that time of the Union Savings & Loan Association, for the express purpose of transferring to it the property and assets of said Union Savings & Loan Association, and absorbing all the assets thereof, and saving the same for the individual benefit of Billings, McArdle, and Baldwin, all of whom were trustees and officers of the said Cooperative Investment Company, and that the said corporation was organized as a part of said conspiracy and combination to defraud the creditors of the said Union Savings & Loan Association. These findings are set forth in detail and with more or less repetition, but we have set forth sufficient of them for the purposes of this case.

These findings in the main were excepted to by the defendants; but, without entering into an analysis of the testimony, an examination of the record convinces us that they were amply justified by the testimony, and we will consider them as the facts in the case in the disposition of this appeal. The court, upon these findings, entered a decree quieting the title of the plaintiff as prayed for, and awarding judgment for the rental value of the lands. From this judgment this appeal is taken.

It is contended that the court erred in the admission of certain testimony. But this court has uniformly decided that the admission of testimony in a case which is tried *de novo* by this court is not ground for a reversal of the cause. This court will look at the testimony and, if it is not properly admitted, will not consider it in reaching its conclusion in the case.

It is also contended that the respondent's case must fail for the reason that the complaint does not allege that the execution against appellant, the Union Savings & Loan Asso-

ciation, had not been returned *nulla bona,* and that there was no allegation that the appellant had no other property out of which the judgment could be made; and many cases are cited from this court to sustain this contention. The court, however, found that, when the execution in the said cause was levied, the said Union Savings & Loan Association had no property in the state of Washington or Clallam county subject to levy and sale, save the property described in the deed of July 18, 1899, and pretended to be conveyed to the said Baldwin. If that be true—and there is testimony to sustain the finding—this being an equity case, the court will not reverse the case and send it back for a retrial for the purpose of allowing the respondent to amend his complaint, but will consider the complaint amended in that respect.

The main contention of the appellants, outside of the correctness of the facts found, which we have before noticed, is that the action must fail for the reason that it is an action to quiet title, and that there is no allegation in the complaint that the plaintiff was in possession, or that the land which is the subject of the suit was vacant land, or that the premises were unoccupied; but that, on the other hand, such a conclusion was negatived by the allegation that the defendants Baldwin and the Cooperative Investment Company had received the rents and profits since the date of the sale of the property; and *Spithill v. Jones,* 3 Wash. 290, 28 Pac. 531, is relied upon to sustain this contention. It *was* decided by this court in that case that an action to quiet title should be dismissed for want of equity under our statute, where there was no proof showing that the plaintiff was in possession of the land in question or that the same was unoccupied by any person, on the theory that to hold the contrary doctrine would be to allow an equitable form of action to be substituted in every case for an action of ejectment, and the defendant in possession of the property to be deprived of his constitutional right to a trial by jury. But

it was afterwards decided by this court, in *Bates v. Drake,*
28 Wash. 447, 68 Pac. 961, that where defendants do not,
until after trial, raise the objection that plaintiffs' form of
action should have been in ejectment instead of one to quiet
title, because they were not in possession of the land and
the land was not vacant and unoccupied, the objection must
be deemed as waived.  In that case the defendant demurred
to the complaint, afterwards answered by denials, and by
affirmative matter constituting a defense in which he pleaded
title in himself by virtue of the deed the plaintiffs sought to
have cancelled, praying that the plaintiffs' muniment of title
be held void and a cloud upon the title; thus, as the court
said, "Submitting to the court the very issue the plaintiffs
sought to have submitted."  In this case it is true that there
was no demurrer to the complaint, but the objection was
raised, after the issues were joined, that the complaint did
not state a cause of action, the answer affirmatively alleging
title in the Cooperative Investment Company, deraigning
their title historically from the Union Savings & Loan Asso-
ciation, and praying that the defendant the Cooperative
Investment Company, be decreed to be the owner in fee simple
of said real property, free and clear of all right, title, in-
terest, or claim of the plaintiff.  This answer brings the
case squarely within the rule announced in *Bates v. Drake,*
*supra,* with the exception that the objection was raised by
objection to the testimony instead of by the ordinary de-
murrer.  But this objection was in reality a demurrer to the
complaint, for it was to the effect that the complaint was
not sufficient to constitute an action because the allegation
of possession did not appear in the complaint, and the de-
fendants ought not to be placed in any better position than
a defendant who demurs to an insufficient complaint in an
orderly way, by demurring in this irregular way after the
issues had been joined.  The appellants then, upon the issues
which they had helped to make, tried out the case, asking

that their title be established and that any cloud upon it be removed. This same doctrine was announced in *McKinley v. Morgan*, 36 Wash. 561, 79 Pac. 45, where, in discussing the case of *Spithill v. Jones*, this court said:

"This is a case with which this court has never been entirely satisfied, and we do not care to extend the doctrine there announced."

In *Anderson v. Provident Life & Trust Co.*, 25 Wash. 20, 64 Pac. 933, where an action was brought in the form of a creditor's bill to set aside fraudulent conveyances and subject real estate to sale free from any cloud occasioned by such conveyances, and the objection was raised that the complaint did not state facts sufficient to entitle the appellant to equitable relief, it was said:

"Nor does the fact that a party may have a remedy at law necessarily preclude him from invoking the aid of equity in cases of this character. If the legal remedy is inadequate to afford full relief, resort may be had to equity in proper cases. Indeed, it is a well-established principle that equity has concurrent jurisdiction with law over frauds, under statutes relative to fraudulent conveyances";

citing Wait on Fraudulent Conveyances (3d ed.), § 51, and Bump on Fraudulent Conveyances (4th ed.), § 530. The court continuing says:

"And the creditor himself may select the forum in which the question of fraud shall be determined, or, in other words, he has the option to submit the determination of the question either to a court of law or a court of equity;"

citing Bump on Fraudulent Conveyances (4th ed.), p. 532, where that author says:

"But the remedy most frequently used is a bill in equity, because a court of equity sifts the consciences of the parties and removes the cloud from the title. Fraud constitutes the most ancient foundation of its jurisdiction, and is a sufficient ground for its interposition. It may grant relief, although there is ample remedy at law; for no relief is adequate except that which removes the fraudulent title."

It is further said by this court, quoting from Wait on Fraudulent Conveyances (3d ed.), page 60:

"The existence of a remedy at law does not interfere with the right of a creditor to resort to a court of equity to secure a cancellation of a fraudulent conveyance, . . ."

The case of *Spithill v. Jones, supra,* has been sustained grudgingly by this court in one or two cases since its announcement, but always, as in the cases cited above, restricting the doctrine announced as far as possible without absolutely overruling that case. But in consideration of the fact that this case would have to be affirmed in any event, and in consideration of the further fact that the doctrine announced in that case seems to be opposed to reason and to the spirit of our statutes, we take this occasion to overrule it and all subsequent cases based upon it. In undertaking to limit the effect of that ruling, this court, in *Bates v. Drake, supra,* said:

"*Spithill v. Jones,* 3 Wash. 290, 28 Pac. 531, is cited as sustaining this contention. This court in that case did hold that an action to quiet title should be dismissed for want of equity where the proofs failed to show that the plaintiff was in possession of the lands the title to which was sought to be quieted, or that the same was unoccupied by any person. It spoke also as if the question was one of the jurisdiction of the court. It is clear, however, from the opinion as a whole, that the court did not mean by its use of this term that it was without jurisdiction or power to determine the subject-matter of the controversy between the parties or that a judgment entered therein would have been void, but meant rather that equity would not entertain a suit to quiet title when the plaintiff had an adequate remedy at law, . . . The fact that the plaintiff is or is not in possession, or that the land is or is not vacant, does not affect the jurisdiction of the court to determine the subject-matter of the controversy between the parties, nor does it affect the merits of that controversy, but affects only the plaintiff's right to have the merits of the controversy determined in that particular form of action."

8—46 WASH.

This being true, it shows how palpably wrong the announcement made in *Spithill v. Jones* was, and the inconsistency which this court was driven to in the case just cited in trying to sustain the doctrine of that case on the theory that it referred only to the form of the action, when the first expression of the law on the subject of the form of civil action provides that, "There shall be in this state hereafter but one form of action for the enforcement or protection of private rights and the redress of private wrongs, which shall be called a civil action." Pierce's Code, § 250 (Bal. Code, § 4793). This is a mandatory provision of the law, and a ready yielding of allegiance to this mandate on the part of the courts of the state will simplify legal proceedings and strip them of fictions and technicalities which find no place in the reformed procedure. This holding does not lead to the conclusion that all the distinctions between law and equity are abolished, or that equitable actions are not to be tried under the same rules under which they always have been tried. It simply means that it makes no difference what the action is termed, and that the relief sought must be granted according to the demands of the complaint if they are substantiated by proof; that an applicant for justice is not to be turned out of the temple of justice scourged with costs because he happens to come in at one door instead of another, and be compelled to enter that other door to ask the same remedy at the hands of the same court. The court is the same, sitting at the same place, clothed with the same authority, and when once the applicant has gained legal access to the court through a statement of facts, which the law demands that the complaint shall be, he is entitled to just such relief as his complaint and his proof warrant; and in the trial of the cause, if it is discovered that the relief is equitable, the court will administer the equitable relief. If it becomes necessary in the trial of the cause to determine a purely legal right, the court, as it always has done, may call a jury to try out that question.

But this court has spoken on this subject before, and outside of many cases which have tended to protect a party who is in court from being excluded because of the mere form of his action, it was decided in *Browder v. Phinney*, 30 Wash. 74, 70 Pac. 264, that it was error for the court to dismiss an action for damages for forcible and wrongful eviction from leased premises, on the ground of the invalidity of the lease in law for lack of acknowledgment. In discussing that question, it was said:

"We think the court erred in dismissing the action. Whether or not the contract or lease was originally illegal, it is not necessary for the purpose of this discussion to determine. But if illegal, a part performance of the contract, either by the plaintiffs taking possession of the premises under the lease or by the payment and acceptance of rent under the terms of the lease, would render the lessor liable for damages for its violation by him; and the court, in holding that part performance could not be shown in an action for damages, lost sight of the rule of concurrent jurisdiction with which courts are clothed, especially under the reformed procedure. Our statute (Bal. Code, § 4793) provides that there shall be in this state but one form of action for the enforcement of private rights and the redress of private wrongs, which shall be called a 'civil action'; and this statute evidently means something. It was not intended by this enactment of the law-making power to leave in force or to perpetuate the old distinctions which existed at the common law between legal actions and equitable procedures, so far as the manner of bringing the actions is concerned. It was plainly the intention thereby to abolish such distinctions, and to substitute for all other forms of complaint a statement of facts, for it provides that the complaint shall contain a plain and concise statement of facts constituting the cause of action, and this plain and concise statement of facts must necessarily be the same (if it is a concise statement of facts) whether the relief or remedy sought by the action be equitable or legal in its nature. In this case, if the plaintiffs had demanded specific performance, the statement of facts on which the demand would have been based would have been identically the same statement as that upon which

the demand made *was* based. It is not in accordance with the spirit of the code to turn a litigant out of court, and subject him to the costs and delays of bringing another action before the same tribunal on the same pleadings. . . . It may not have been the intention of the legislature to abolish all the distinctions which have so long existed between legal and equitable proceedings and the rules governing them. That question it is not necessary to discuss here. But it was the evident intention to provide for the trial and determination of all rights, whether denominated legal or equitable, in one action, and to relieve from the necessity of a multiplicity of suits to determine controversies between litigants. The superior court is a court of general jurisdiction. It has the power to try either legal or equitable proceedings, having concurrent jurisdiction in both. It is not a law court, nor an equity court, nor a probate court, but it is all the time the superior court of general jurisdiction, empowered to try all these differently termed causes under the title of a civil action; and when it has once acquired jurisdiction of that civil action. it may proceed in an orderly way to determine equitable, legal, or probate controversies";

citing *Filley v. Murphy*, 30 Wash. 1, 70 Pac. 107, where this question is pointedly discussed, and Pomeroy's Equity Jurisprudence (2d ed.), §§ 183, 187.

Applying these principles to this case, the respondent, if the allegations of his complaint were true, was entitled to relief. These allegations constituted a statement of facts, and being properly before a court of competent jurisdiction to try the questions raised by the pleadings, whatever relief he *was* entitled to should have been administered by that court, regardless of whether the relief was equitable or legal.

The judgment is affirmed.

HADLEY, C. J., MOUNT, FULLERTON, ROOT, CROW, and RUDKIN, JJ., concur.