SANFORD A. HOOPER *vs*. PETER HENRY.

ALANSON HINMAN *vs*. PETER HENRY.

SANFORD A. HOOPER *vs*. AUGUST V. HEYDERSTADT.

ALANSON HINMAN *vs*. AUGUST V. HEYDERSTADT.

November 28, 1883.

**Action to Quiet Title—Pleading—Waiver.**—In an action under the stat-
ute to determine adverse claims to real estate, if the defendant in his
answer alleges title in himself, and asks the court to adjudge plaintiff's
claim to be void, he waives the objection that plaintiff is not in posses-
sion, or that the land is not vacant and unoccupied, and plaintiff, there-
fore, not in position to bring the action.

**Mortgage with Warranty—Acquisition of Prior Mortgage, by Mort-
gagor.** — A mortgage contained covenants of seizin, against incum-
brances, and of warranty. The mortgagor subsequently took an assign-
ment of a prior outstanding mortgage. *Held*, that, if there was no
merger, said prior mortgage was, by reason of the covenants in the
second, postponed to, and subject to, the second, so that, when the second
was foreclosed, and the time to redeem expired without redemption, it
cut off all rights under the first, including the right to r 'eem from a
foreclosure thereof.

In each of these four cases the defendant appeals from a ju    ent
of the district court for Scott county, where the actions were tr.    v
*Wilkin,* J., acting for the judge of the 8th district.

*E. Southworth,* for appellant, in each case.

*L. M. Brown,* for respondent, in each case.

GILFILLAN, C. J.    These are actions under the statute to determine
·adverse claims to real estate.  They are so connected in the facts that
they may be disposed of in one opinion.  In the Hooper cases, the
·complaints allege plaintiff's ownership, and that he is in possession;
in the Hinman cases, plaintiff's ownership, and that the land is vacant
·and unoccupied.  Each answer admits that defendant claims an estate
·or interest in the land, denies each and every other allegation in the

complaint, alleges that the defendant is the owner in fee of an undivided estate in the land, and prays that plaintiff's claim to such undivided interest be adjudged void. That plaintiff is or is not in possession in the Hooper cases, and that the land is or is not vacant and unoccupied in the other cases, does not go to the merits of the controversy between the parties, but goes only to the plaintiff's right to present the matters in controversy for determination in this particular form of action. And the defendants waive their objection to that by setting forth their claims, and asking the court to determine them.

The facts of the cases, so far as necessary to their determination, are, briefly stated, these: April 19, 1871, one. William Hinman, then the owner of the land involved in all the cases, consisting of a governmental quarter-section, executed a mortgage thereon (recorded the next day) to one McMahon. May 24, 1872, he conveyed the N. W. $\frac{1}{4}$ of the quarter-section (by deed recorded July 12, 1872) to plaintiff Hooper. June 7, 1872, by deed, (never recorded,) McMahon granted, bargained, sold, released, and quitclaimed to Hooper all his right, title, interest, claim, or demand in or to said N. W. $\frac{1}{4}$. December 26, 1872, William Hinman (by quitclaim deed recorded January 7, 1873) conveyed the other three-quarters of the quarter-section to one Albert Manley. January 16, 1873, Albert Manley (by deed of mortgage recorded June 7, 1873) mortgaged the said three-quarters to plaintiff Alanson Hinman, the mortgage containing full covenants of seizin, against incumbrances, and of warranty against all claims whatever. April 16, 1873, McMahon (by deed recorded October 1, 1878) assigned his mortgage to Albert Manley, who, May 15, 1878, (by deed recorded October 1, 1878,) assigned it to Hubert H. Manley. The latter (April 7, 1879) foreclosed the mortgage by advertisement, selling the entire quarter-section, and himself becoming the purchaser. On the same day plaintiff foreclosed his mortgage by advertisement, and himself became the purchaser. There was no redemption from this foreclosure. April 12, 1880, one William Henry, under two judgments against William Hinman, (docketed, respectively, September 12, 1873, and April 19, 1875,) and one against said Hinman and Albert Manley, (docketed August 9, 1878,) attempted to redeem from the foreclosure of the McMahon mortgage.

There was no other attempt to redeem from that foreclosure. William Henry conveyed by quitclaim deed to defendants. April 12, 1880, in the district court, in an action between William Henry, plaintiff, and William Hinman and Albert Manley, defendants, the said deed from Hinman to Manley was adjudged to be fraudulent and void as to said Henry, and his judgment, docketed September 12, 1873, was declared a lien on the premises described in that deed.

The covenant in the mortgage by Albert Manley to the plaintiff Hinman estopped the former, and all who might claim under him by transfer subsequent to the mortgage, from asserting any claim against the lien created by it. When the McMahon mortgage was assigned to Albert Manley, it became, by virtue of those covenants,—laying aside the question of merger,—subordinate and subject to the Hinman mortgage, for the reason that he was bound to protect the latter against the former. If not merged, he might enforce it, but not as against the Hinman mortgage. This was the utmost he could claim under the assignment to him. He could pass to his assignee no greater right than he had. It follows from this that when the time to redeem from the Hinman foreclosure expired, no redemption being made, the title became absolute in him, and the McMahon mortgage and all rights under its foreclosure were cut off. When William Henry attempted to redeem from it, there was nothing to redeem from, and such attempt was futile. This settles the title in the cases of Hinman. In the Hooper cases, William Henry did not have, nor claim, any right to redeem by reason of a lien on Hooper's land. His right to redeem as to that land depended on two things: *First*, a right to redeem the other three 40-acre pieces included in the McMahon mortgage; *second*, that the whole quarter-section was, in the foreclosure of that mortgage, sold as one tract, so that, to redeem the part on which he had a lien, it was necessary to redeem the other also. His right to redeem such other was only an incident to his right to redeem the three forties, and fell with his right to redeem those forties. That right fell, as we have seen, before he attempted to redeem, when the title on which his lien had existed passed absolutely to Hinman, and the mortgage and the foreclosure from which he attempted to redeem had been cut off.

Judgments in all the cases affirmed.