[No. 4040. Decided April 26, 1902.]

CHARLES O. BATES *et al.*, *Appellants*, v. C. M. DRAKE *et al.*, *Respondents*.

ACTIONS — MISTAKE OF PLAINTIFF AS TO FORM — WAIVER OF OBJECTIONS.

Where defendants do not raise the objection until after trial that plaintiffs' form of action should have been in ejectment instead of one to quiet title, because they were not in possession of the land, and the land was not vacant and unoccupied, the objection must be deemed as waived.

SAME — ESTOPPEL OF DEFENDANTS.

Where defendants, in an action to remove a cloud and quiet title, themselves submitted to the determination of the court by their answer the very issue appellants sought to submit, and obtained the relief for which they prayed, they cannot upon an appeal by plaintiffs therefrom be heard to say that the plaintiffs originally mistook their form of action.

JUDGMENTS — RES JUDICATA.

A judgment of dismissal of an action without prejudice would not have the effect of *res judicata* on the merits of the controversy even if the court erred in refusing to give judgment on the merits.

FRAUDULENT CONVEYANCES — WHO ARE CREDITORS — CLAIMANT FOR DAMAGES.

   A person having a claim against another for damages sounding in tort is a creditor of that other within the meaning of the statute giving creditors the right to question transfers of property made to hinder, delay and defraud creditors.

SAME — PLEADING — INSOLVENCY OF FRAUDULENT GRANTOR.

   In an action to recover land fraudulently conveyed the insolvency of the grantor is sufficiently alleged, as against a general objection to the complaint, where it alleges that the grantor had no other property in the state than that fraudulently transferred at any of the times mentioned in the complaint, out of which execution against him could be made.

SAME — BURDEN OF PROOF — SUFFICIENCY OF EVIDENCE.

   Under Bal. Code, § 4580, which provides that in every case where any question arises as to the good faith of any transaction between husband and wife the burden of proof shall be upon the party asserting the good faith, a deed by a husband to his wife should be deemed fraudulent, where it appears that the husband obtained a conveyance and the possession of valuable property without consideration, and that his wife actively participated in the transaction; that the deed by husband to wife was made after the commencement of suit by the husband's grantors to set aside the deed to him; that the husband and wife had made inconsistent statements as to which of them was the owner before suit, and after suit it was claimed the consideration for the conveyance between the spouses was the payment of moneys out of the wife's separate estate to the husband, from moneys he had in his hands as her agent, but it was not shown how much money of hers he had, nor what sum was actually paid by her for the property.

Appeal from Superior Court, Pierce County.—Hon. OLIVER V. LINN, Judge. Reversed.

   *Bates & Murray* and *John H. McDaniels* for appellants.

   *Eric E. Rosling,* for respondents.

The opinion of the court was delivered by

   FULLERTON, J.—In December, 1893, one Alexander S. Bailey and Amanda E. Bailey, his wife, were the owners

of certain lots in the city of Tacoma, in this state, the title
to which stood in the name of Amanda E. Bailey. At the
same time the respondent C. M. Drake claimed to be the
owner of certain parcels of land situate in Los Angeles
county, state of California. The several properties were
valued by the parties at $12,000. On the 30th day of that
month the parties agreed to exchange the properties one for
the other, and in pursuance of that agreement the Baileys
on that day executed and delivered to C. M. Drake a deed
to the property in the state of Washington, and put him
in the possession of the same. The Drakes at the same
time executed to Amanda E. Bailey a deed to the property
in California. This deed was put in escrow, to be deliv-
ered when the Baileys should release the Washington prop-
erty from certain liens then existing against it, and which,
in the agreement of exchange, they had contracted to pay.
The Baileys were put in possession of the California prop-
erty, at the time of the execution of the deed, but were
unable or unwilling to pay the liens on the Washington
property, because, they claimed, Drake's title to the Cali-
fornia property was defective, and they were unable to
obtain a loan thereon. Some litigation was had between
the parties in the courts of both states over the properties,
the precise nature of which does not clearly appear; the
final result, however, was that the Drakes regained pos-
session of the property in California and the deed to same,
which they had deposited in escrow; thereafter having pos-
session and the legal title, at least, to both tracts. While
these matters were pending, C. M. Drake for a recited
consideration of $3,000, conveyed to his wife, Maria S.
Drake, all his interest in the property in Washington,
reciting in the deed therefor, the following: "The inten-
tion of the grantor herein being to convey to grantee, his
wife, all of his right, title, and interest and estate, includ-

29—28 WASH.

ing any community interest that he may have therein, and vests the title thereto in grantee as her separate property." Afterwards Alexander and Amanda Bailey began an action in the superior court of Pierce county, in this state, against C. M. Drake, in their complaint in which they recited the transaction between the parties, averred they had been damaged thereby in the sum of $10,368, and recovered a judgment for the full sum demanded. Execution was issued upon this judgment and the property in this state levied upon and sold to Baileys for $5,000, and a certificate of sale issued to them by the sheriff. This certificate was sold and assigned to the appellants in this action prior to the time for redemption had expired.

The present action was instituted by the appellants while they held only the certificate of sale. In their complaint they alleged the agreement to exchange properties between the Baileys and C. M. Drake; the exchange of the properties thereunder; that C. M. Drake, as an inducement to the making of the exchange, represented and stated that he was the owner of and had perfect title to the property sought by him to be exchanged for the property of the Baileys, all of which was well known to the respondent Maria S. Drake. They alleged the recovery of the judgment against C. M. Drake arising out of the exchange of the properties; that C. M. Drake had no other property in this state out of which the judgment could be made other than the property mentioned; the execution upon the judgment; the sale of the property thereunder, by the sheriff to the Baileys, and the assignment of the certificate of sale to them. They alleged that the deed made by C. M. Drake to his wife was made without consideration, and with the intent to hinder, delay and defraud their creditors, and especially the Baileys and their assignees, and that the wife received the conveyance with such intent, and without

paying any consideration therefor. They prayed that the
deed from C. M. Drake to Maria S. Drake be canceled, set
aside, and held for naught, that it be adjudged that
neither of the parties thereto had any interest in the prop-
erty so conveyed other than the right to redeem from the
sheriff's sale, and that the appellants have such general re-
lief as to the court should seem meet and equitable. After
issue had been joined on the allegations of the complaint,
but prior to the trial of the cause, the appellants received
a sheriff's deed to the property, whereupon they filed a sup-
plemental complaint setting up that fact, and further pray-
ing that they be adjudged the owners in fee simple thereof.

The respondents filed a general demurrer to the original
complaint, which the trial court overruled. They there-
upon answered separately, each denying all of the allega-
tions of the complaint save the exchange of the properties
between C. M. Drake and the Baileys, and that he had con-
veyed the property received in the exchange to his wife,
Maria S. Drake. For a further and separate defense the
respondent C. M. Drake alleged that he never at any time
had any interest in the property in question, but held the
same in trust for his wife, who furnished the consideration
for its purchase from the proceeds of her own separate
funds and property acquired by her prior to her
marriage with him. He also pleaded, as *res ju-
dicata*, another action    between the    same    parties,
brought to eject them from the premises, which
was dismissed without prejudice by the court at the con-
clusion of the evidence. The respondent Maria S. Drake
filed an answer containing substantially the denials and
allegations set up by her co-defendant; further alleging,
however, that the sale made by the sheriff of the property
in suit was a cloud upon her title, and prayed that her
title be adjudged good and valid, that the sale and muni-

ments of title relied upon by the appellants be held void, that they be enjoined from in any manner asserting title to the premises adverse to her, and for general relief. The allegations of the affirmative answers were put in issue by replies. The trial court, after hearing, found that the deed from C. M. Drake to his wife was made for a valuable consideration, and without any intent to hinder, delay, or defraud creditors, and was received by the wife without any such intent. A decree was entered accordingly, holding for naught the appellants' muniments of title, enjoining them from asserting any claim to the property by reason thereof, and quieting the title to the premises in the respondent Maria S. Drake. This appeal is from that decree.

As a preliminary question, the respondents insist that the appellants cannot maintain this action. It is said that, as their complaint does not allege, and it was not shown by the evidence, that the land in controversy was in the possession of the appellants, or that the same was vacant, at the time the suit was instituted, the appellants cannot recover, because a plaintiff must allege and prove one or the other of these facts before he can maintain an action to quiet or remove a cloud from title. *Spilhill v. Jones,* 3 Wash. 290 (28 Pac. 531), is cited as sustaining this contention. This court in that case did hold that an action to quiet title should be dismissed for want of equity where the proofs failed to show that the plaintiff was in possession of the lands the title to which was sought to be quieted, or that the same was unoccupied by any person. It spoke also as if the question was one of the jurisdiction of the court. It is clear, however, from the opinion as a whole, that the court did not mean by its use of this term that it was without jurisdiction or power to determine the subject-matter of the controversy between . the parties or

that a judgment entered therein would have been void, but meant rather that equity would not entertain a suit to quiet title when the plaintiff had an adequate remedy at law, and that he had such adequate remedy in that case by an action of ejectment against the person in possession. In other words, it was held that plaintiff had mistaken his form of action, and the court would not permit him to maintain it over the objection of the defendant. And this must be so from the nature of the objection. The fact that the plaintiff is or is not in possession, or that the land is or is not vacant, does not affect the jurisdiction of the court to determine the subject-matter of the controversy between the parties, nor does it affect the merits of that controversy, but affects only the plaintiff's right to have the merits of the controversy determined in that particular form of action. Being so, it is a right which the defendant can waive, and when he does so, and consents to a trial upon the merits, the judgment entered therein is not void, or voidable even, except for errors committed in the course of the trial which would render the judgment voidable were the plaintiff's right to maintain the action absolute. *Hooper v. Henry,* 31 Minn. 264 (17 N. W. 476); *Mitchell v. McFarland,* 47 Minn. 535 (50 N. W. 610). The question not being jurisdictional, it may be doubtful whether the respondents can urge it upon the appeal of their adversaries; but, passing this, it is clear that they have waived the objection. After their demurrers were overruled, they not only answered by denials and by affirmative matter constituting a defense, but they answered by a pleading in the nature of a cross complaint, in which they pleaded title in one of themselves by virtue of the deed the appellants sought to have canceled, praying that the appellants' muniments of title be

held void and a cloud upon such title; thus submitting to the determination of the court the very issue the appellants sought to have submitted. What is more, they obtained the relief for which they prayed. Certainly they cannot, on an appeal by their adversaries from the judgment granting that relief, be heard to say that the appeal cannot be maintained because the appellants originally mistook the form of action in which they sought to submit to the court the question finally determined by it. They cannot hold to the benefits of the judgment and deny their opponents the right to contest it on the ground that the controversy which led up to it was not before the court. On any theory the appellants have the right to have the judgment entered reviewed by this court, and reversed, if not found to be consonant with the law and facts of the case. But we are clear that the appellants are entitled to something more,—that they are entitled to have the whole of the controversy determined, because the respondents, by denying the appellants' title, and setting up title in one of themselves, and asking to have the question adjudicated, have waived the right to object to the form of the action.

The respondents next insist that the appellants cannot, in any event, recover, because the question became *res judicata* in the former action mentioned, which, as we have said, was dismissed without prejudice. It is not contended that the judgment actually entered therein has the effect of *res judicata* on the merits of the controversy, but that the respondents were entitled in that action to a judgment on the merits, and that the court erred in refusing to enter it. It is evident, however, that it is to the judgment actually entered in an action which is or is not a bar to another action, not a judgment that might or ought to have been entered therein. It is, perhaps, needless to add that a judgment of dismissal of an action without prejudice is

not a bar to another action between the same parties for the same cause of action.

Another reason urged why the appellants cannot recover is that they were not creditors of C. M. Drake at the time he conveyed the property at Tacoma to his wife. It is said that the predecessors in interest to the appellants at that time had at most only an unliquidated claim for damages for a fraud practiced upon them by C. M. Drake, and that one holding an unliquidated claim for damages against another, sounding in tort, does not constitute the claimant a creditor before the claim is prosecuted to judgment, nor invest him with the right given by law to creditors to question fraudulent or voluntary transfers of property made by the person against whom the claim exists before the claim is reduced to judgment. There are cases which maintain this contention, but they are based, as we understand them, upon statutes not so broad as the rule in force in this state. The statute of 13 Eliz. c. 5, which is a part of the common law of this state (*Wagner v. Law*, 3 Wash. 500-502, 28 Pac. 1109, 28 Am. St. Rep. 56, 15 L. R. A. 784), provided that all conveyances made with the intent to hinder, delay, or defraud creditors and others of their just and lawful actions, suits, debts, accounts, damages, etc., should be deemed and taken as void, and of none effect. In those states where a similar statute is in force, or which recognize this statute as being a part of their common law, it is the almost uniform holding that a person having a claim against another for damages sounding in tort is a creditor of that other within the meaning of the rule, and this holding, we think, is supported by the better reason.

Again, it is said the appellants cannot recover because it was not alleged that Drake was insolvent at the time of the conveyance which is alleged to have been fraudulently

made. The complaint, as we have shown, alleges the agreement between the parties to exchange properties, the deeds made in pursuance of that agreement, the deed from C. M. Drake to Maria S. Drake, and the times of their several executions; that execution had been issued upon the judgment, and that the sheriff had returned that he was unable to find any other property belonging to C. M. Drake out of which the execution could be made, and further alleges that "C. M. Drake had no other property in the state of Washington at any of the times herein mentioned out of which to make said execution." This is sufficient against the general objection here made. *Cook v. Tibbals,* 12 Wash. 207 (40 Pac. 935).

On the question of the good faith of the conveyance from C. M. Drake to his wife, we think the trial court erred. By statute in this state (Bal. Code, § 4580) it is provided that in every case where any question arises as to the good faith of any transaction between husband and wife, whether a transaction between them directly or by the intervention of a third person, the burden of proof shall be upon the party asserting the good faith; and in *Liebenthal v. Price,* 8 Wash. 206 (35 Pac. 1078), after referring to the statute, we said it was a general rule, where transfers of property from husband to wife are questioned, that the payment of a valuable consideration must be shown by proof of the most satisfactory character. While it may be true that a conveyance from a husband to a wife is not of itself a badge of fraud, either under the rule of the statute or the general rule cited, it is nevertheless a fact, which naturally awakens suspicion, lends greater weight to other unfavorable circumstances, and will be for that reason set aside upon less proofs of fraud than will a transaction between parties not having the same confidential relation. Turning to the record, and consid-

ering the entire transaction, it is at once obvious that it does not present the respondents in a very favorable light. It is shown that C. M. Drake obtained from the appellants' assignors a deed to and possession of a very valuable property without consideration, and that Mrs. Drake actively participated in the transaction by which that deed and possession thereunder was obtained. It is shown that the deed in dispute was made after the Baileys had commenced a proceeding in which they sought to set aside the deed from themselves to C. M. Drake. It was shown further that nothing had been expended upon the property by the respondents, either in the way of taxes, interest, or improvements over and above what they have received from the property as rents. In their statements as to which of them claimed to own the property prior to the deed in dispute the respondents have not been entirely consistent. In their answers they allege that C. M. Drake originally acquired the property in trust for his wife, and that she furnished the consideration for the transfer from the Baileys to him out of her separate funds and property acquired by her prior to her marriage; that C. M. Drake has never had or claimed any interest in the property, and that Mrs. Drake has collected and received the entire rents and profits of the property since it was first acquired; and in their testimony, though silent as to the consideration for the first deed, they say that C. M. Drake never had or claimed to have any interest in the property, and that Mrs. Drake has collected the rents since it was first acquired by C. M. Drake. It was shown, however, that C. M. Drake, in an affidavit filed by him shortly after the transfer of the property, stated that Amanda E. Bailey and himself were the only persons interested in the exchange of the properties, and that the other parties joined in the deeds solely

because of the marital relations existing between them and
the parties to the trade, and not because of any necessity
of their so doing.   Again, in another affidavit, filed later,
which Mrs. Drake in a concurring affidavit, swears she has
read and knows to be true, he says he went into occupancy
of the property at the date of the deed with his family, and
has since continued in such occupancy; that he was then
renting rooms therein; that he had paid premiums on
certain insurance policies thereon; that he was receiving
the rents, and had contracted with tenants with respect to
rents; that he had expended a certain sum in repairs upon
the houses thereon for the purpose of making them more
inviting to tenants; and that he intended to maintain them
in good condition and improve them still more.   These affi-
davits were filed in proceedings begun shortly after the
original transfer, when presumably, the facts were fresh
in the minds of the affiants.   It would seem that were the
present claims not an afterthought, some mention would
have been made of the wife's ownership of the property,
and of the fact that she was receiving the rents.  On the
question of the consideration for the deed in dispute, Mrs.
Drake testifies that she furnished the consideration out of
money she had accumulated before her marriage, and which
was in her husband's hands as her agent.   How much of
her money her husband had, when he obtained possession
of it, or what part of it she turned over to him in consid-
eration of the deed, she does not state.   C. M. Drake's
testimony is but little more explicit.   He does say that he
deeded the property to his wife for three thousand dollars;
that his wife furnished consideration for the deed; that the
consideration was furnished from money she had before
her marriage; that ever since their marriage his wife had
her separate estate, and that the money was in his hands
simply as her agent; and that "the purchase price of said

property was given me in 1894," but he does not say in terms that his wife paid him $3,000, or any particular sum, for his interest in the property. While this fact might be inferred from what he does say, yet it is apparent that all he says could be true, and nothing more than a mere nominal sum pass between the parties as a consideration for the transfer. Ordinarily, where a witness is without motive to state other than the truth, where he has no interest in the subject-matter in controversy, or where he is unlettered, and it is evident from what he does say that he has no very accurate knowledge of the meaning of words, the ordinary mind is inclined to give his statements that meaning which he evidently intended they should bear. But here these conditions are all reversed, the witness was interested, he was not unlettered, he had an accurate knowledge of the meaning of words;—in fact he appears as a well-educated, intelligent man, possessing more than the ordinary amount of shrewdness, and as having a very clear comprehension of the vital issues of his case. Under the statute the burden was upon the respondents to establish the good faith of the transaction between them. They were obligated to show the payment of a valuable consideration by proofs of the most satisfactory character, and it would seem that, had such a consideration been paid for the deed, the parties thereto would have said so in terms not capable of a double meaning.

But, without pursuing the inquiry further, we are convinced that the conveyance in question was not made in good faith, or for a valuable consideration, and was intended to defraud the Baileys and their assignees of any judgment they might recover for the fraud practiced upon them by C. M. Drake. The judgment of the lower court is therefore reversed, and the cause remanded with instruc-

tions to enter a judgment in favor of the appellants according to the prayer of their complaint.

REAVIS, C. J., and WHITE, HADLEY, ANDERS, MOUNT and DUNBAR, JJ., concur.