[No. 10978.  Department Two.  May 24, 1913.]

RACHEL SALLASKE, *Appellant*, v. LONDA L. FLETCHER *et al.*,
*Respondents.*[1]

APPEAL—RECORD—EXCEPTIONS.  One general exception to findings
of fact is insufficient to secure a review of the evidence; even in
equitable actions, where findings are made.

FRAUDULENT CONVEYANCES—BETWEEN HUSBAND AND WIFE—COM-
MUNITY PROPERTY—RIGHTS OF CREDITORS—"EXISTING EQUITY."  The
husband's contingent liability upon a lease, upon which no rent was
due at the time, is an "existing equity" in favor of creditors, within
Rem. & Bal. Code, § 8766, providing that gifts or conveyances of
community property from a husband to his wife are valid, except as
to "any existing equity in favor of creditors," at the time of such
gift or conveyance.

FRAUDULENT CONVEYANCES — RIGHTS OF CREDITORS — CONTINGENT
CLAIMS.  Under the statutes of this state, conveyances which are
fraudulent as to creditors are subject to be defeated by creditors
having contingent claims subsequently maturing.

FRAUDULENT CONVEYANCES—EVIDENCE—ADMISSIBILITY.  In an ac-
tion to set aside a fraudulent conveyance, it is admissible, on cross-
examination of the fraudulent grantor, to offer a financial statement
made by him to an agent of the creditors, representing the aggregate
value of his property, although he made the statement for the pur-
pose of procuring a loan.

Appeal from a judgment of the superior court for Spokane
county, Clifford, J., entered May 3, 1912, upon findings in
favor of the defendants, in an action to restrain an execution
sale.  Affirmed.

*Samuel R. Stern*, for appellant.

*Danson, Williams & Danson* (*Geo. D. Lantz*, of counsel),
for respondents.

ELLIS, J.—This is an action to restrain the sale of prop-
erty under executions issued upon judgments against the
plaintiff's husband, the plaintiff claiming the property as her
separate property.  The court, by separate findings, among

[1]Reported in 132 Pac. 648.

other things, found, in substance, the following facts, which we deem controlling. In February, 1911, the plaintiff's husband leased certain premises from the defendants Fletcher and Stebbins for a term of one year, at an agreed rental of $165 a month. The premises were used by the husband in carrying on a clothing business. In March, 1911, he sold this stock of goods and assigned the lease to one Herwig, who immediately entered into possession, occupied the premises and paid the rent until July, 1911. The plaintiff's husband sought to be released from his lease of the premises upon this assignment, but was informed by the agent for Fletcher and Stebbins that they would not release him. On May 9, 1911, her husband conveyed to the plaintiff, without consideration, all the property owned by the community composed of himself and the plaintiff, which was of a value of from $30,-000 to $35,000, subject to a mortgage of $2,500. The money derived from the mortgage was used in paying all debts against the community, excepting the contingent liability arising from the lease. At the time of this conveyance, there was no rent due upon the lease. On July 1, 1911, Herwig defaulted in payment of the rent, and in September of the same year Fletcher and Stebbins recovered a judgment in the superior court of Spokane county against the plaintiff's husband and the community composed of himself and the plaintiff for the rent due upon the lease to that date, and again in January, 1912, they recovered a similar judgment for the balance of the rent. About the time the last judgment was rendered, the plaintiff's husband was adjudged a voluntary bankrupt in the Federal court, and the judgments were filed as claims in the bankruptcy proceedings, in which no assets were scheduled by the bankrupt. Thereafter the defendants Fletcher and Stebbins, through the trustee in bankruptcy, caused executions to be issued. Returns *nulla bona* were made. Alias executions were then issued and levied upon the property which had been conveyed to the plaintiff herein. The court made appropriate conclusions upon these findings, and

decreed that the judgments constituted valid and subsisting liens upon the property in question. From that decree, the plaintiff appeals.

The only exception taken to the findings of fact and the conclusions of law based thereon was a general exception as follows, "to all of which plaintiff at the time excepts, which exception is allowed by the court." No exception of any kind was taken to the refusal of the court to make certain findings requested by the appellant. Such an exception is, as we have repeatedly held, wholly insufficient to permit a review of the evidence on appeal. *Pederson v. Ullrich,* 50 Wash. 211, 96 Pac. 1044; *Warehime v. Schweitzer,* 51 Wash. 299, 98 Pac. 747; *Snohomish River Boom Co. v. Great Northern R. Co.,* 57 Wash. 693, 107 Pac. 848; *Pease v. Clayton,* 62 Wash. 26, 112 Pac. 943. The same rule is applicable even in equitable causes where findings are made. *Yakima Grocery Co. v. Benoit,* 56 Wash. 208, 105 Pac. 476. Being precluded from reviewing the evidence, except in one particular, to which we will advert later, we must affirm the decree if these findings are sufficient to support it.

The only question involved in this appeal is, Did the respondents Fletcher and Stebbins have an existing equity by reason of the lease at the time the conveyance was made to the appellant on May 9, 1911, so that the conveyance was as to them fraudulent and void? The statute, Rem. & Bal. Code, § 8766, provides:

"A husband may give, grant, sell, or convey directly to his wife, . . . his community right, title, interest, or estate in all or any portion of their community real property. And every deed made from husband to wife, . . . shall operate to divest the real estate therein recited from any or every claim or demand as community property, and shall vest the same in the grantee as separate property, . . . Provided, however, that the conveyances or transfers hereby authorized shall not affect any existing equity in favor of creditors of the grantor at the time of such transfer, gift, or conveyance."

The appellant contends that the judgment creditor had no existing equity at the time of the husband's transfer to the wife, and there only existed a contingent liability against the husband, which it is claimed was not sufficient under the statute to defeat the transfer. While some courts have held, under statutes declaring conveyances void as to "existing debts," that such conveyances are not void *per se* as to contingent liabilities only, we do not think these decisions applicable under the above quoted statute. There is a clear distinction between "existing debts," and "existing equities." The legislature in using the latter expression must be presumed to have used it advisedly and to some purpose. An existing equity on the one hand implies an existing liability on the other. That liability may be either present or contingent. In either case it is existent. An existing debt implies a present enforceable liability, a debt as distinguished from an equity. One must be said to have an existing equity when he has an existing right to future payment, though it be contingent, of which it would be inequitable to deprive him. This distinction is made plain in a case chiefly relied upon by the appellant, *Severs v. Dodson*, 53 N. J. Eq. 633, 34 Atl. 7, 51 Am. St. 641, where the liability of an accommodation indorser, contingently liable upon current notes, was held not to be an "existing debt" under a statute avoiding transfers as to existing debts. The court intimates that had the statute used the words "existing liabilities" it would have compelled a contrary decision, though the court reprobates as unwise and inexpendient such a statute as relating to fraudulent conveyances generally. The term "existing equity" is certainly as comprehensive as the term "existing liability." We have nothing to do with the unwisdom or inexpendiency of the statute. Those are matters of legislative concern. We are constrained to give effect to the statute as it is written. The term "existing equity" is broad enough to include existing contingent liabilities as well as existing absolute debts. It is too broad to include only the latter. To so confine it

would be to do violence to the language of the statute and go contrary to the universal rule that such statutes are to be construed liberally as in favor of the enforcement of just obligations. Bump, Fraudulent Conveyances (4th ed.), § 502; 20 Cyc. 341.

We will remark in passing, however, that we do not share in the animadversions of the New Jersey court upon the wisdom or expediency of the broader terms of the statute. The claim that a statute giving the holder of a contingent liability founded in a definite and certain contract the benefit of the act without proof of actual fraud, would tend to render voluntary settlements uncertain and precarious, appeals to us with less force than the equally certain result that the narrower provision would tend to render the enforcement of contracts solemnly made easily avoided and so precarious that suretyship, guardian's and personal indemnity bonds, leases and the like would be of little value, since proof of actual fraudulent intent is usually impossible. The broader construction of the statute has the merit of encouraging honesty and fair dealing. *Gannard v. Eslava*, 20 Ala. 732. Were the question not a new one, this would end our discussion, but the question being new and the contrary view being ably presented by counsel, we deem it not improper to consider it from another angle.

It is obvious that under our statute the motive actuating the voluntary conveyance to the other spouse is immaterial. Even assuming, therefore, as counsel would have us assume, that existing debts and existing equities are synonymous terms, this statute would be in effect the same as those statutes directed against fraudulent conveyances generally under which, without regard to the actual motive of the donor, voluntary conveyances are universally held void as to existing creditors the collection of whose debts they hinder or delay. Under such statutes, the act of voluntary conveyance itself is conclusive evidence of fraud. "The intent is presumed from the act." Bump, Fraudulent Conveyances (4th ed.), § 242. In

this aspect, and indulging counsel's assumption, there is absolutely no difference between the statute here involved and the statutes against fraudulent conveyances generally. Under such statutes, both on what we conceive to be the better reasons and the more persuasive authorities, existing creditors are held to be all persons having subsisting obligations against the donor at the time of the voluntary transfer, although their claims be immature or even contingent.

"A contingent liability is as fully protected against fraudulent and voluntary conveyances as a claim certain and absolute, and whoever has a claim or demand arising out of a preexisting contract, although it may be contingent, is a creditor whose rights are affected by such conveyances and can avoid them when the contingency happens upon which the claim depends." 20 Cyc. 421.

See, also, to the same effect, Bump on Fraudulent Conveyances (4th ed.), § 503.

In *Anderson v. Anderson*, 64 Ala. 403, under a statute construed as avoiding all voluntary conveyances as to existing creditors, though such conveyances were not infected with actual fraud, the court, holding a voluntary conveyance subject to be defeated by the subsequently maturing though then contingent liability of the grantor as administrator of an estate, said:

"The term *creditors*, as employed by the statute, has been construed liberally, and not in a narrow, strict, or technical sense. Whoever has a right, claim, or demand, founded on contract, whether contingent or absolute, for the performance of a duty, or for the payment of damages if the contract should not be fully performed, has been regarded as a *creditor*, within the meaning of the statute, against whom a voluntary conveyance will not be supported, |though no breach of the contract, furnishing a cause of action, may occur until after the execution of the conveyance. *Bibb v. Freeman*, 59 Ala. 615; *Foote v. Cobb*, 18 Ala. 585; *Gannard v. Eslava*, 20 Ala. 732."

The following cases announce and exemplify the same principle: *Thomson v. Crane*, 73 Fed. 327; *Bowen v. State ex*

*rel. Bradbury*, 121 Ind. 235, 23 N. E. 75; *Crocker v. Hunt-zicker*, 113 Wis. 181, 88 N. W. 232; *Young v. Heermans*, 66 N. Y. 374; *Stone v. Myers*, 9 Minn. 303, 86 Am. Dec. 104; *Gannard v. Eslava, supra*. This court has declined to construe the term creditor in the general statute in the narrow sense as including only a person to whom there is due a fixed and certain present debt. In *Bates v. Drake*, 28 Wash. 447, 68 Pac. 961, we said:

"The statute of 13 Eliz. c. 5, which is a part of the common law of this state (*Wagner v. Law*, 3 Wash. 500-502, 28 Pac. 1109, 28 Am. St. Rep. 56, 15 L. R. A. 784), provided that all conveyances made with the intent to hinder, delay, or defraud creditors and others of their just and lawful actions, suits, debts, accounts, damages, etc., should be deemed and taken as void, and of none effect. In those states where a similar statute is in force, or which recognizes this statute as being a part of their common law, it is the almost uniform holding that a person having a claim against another for damages sounding in tort is a creditor of that other within the meaning of the rule, and this holding, we think, is supported by the better reason."

Strictly speaking, the lease here in question created a present existing, but contingent liability, not mature it is true, but payable in future on a contingency. It was none the less a present obligation, the equity of which it should be as much the policy of the law to protect as any other obligation. The case of *O'Brien v. Whigam*, 9 App. Div. 113, 41 N. Y. Supp. 40, seems to us directly applicable. In that case the conveyance was executed in 1893. The lease expired next year but was renewed. There was a default in the payment of rent under the renewed lease. Though there was evidence of actual fraudulent intent, the court also indicates that, even in the absence of this element, the landlord, as a creditor within the meaning of the statute, could assert his claim for rent as against the conveyance, citing *Young v. Heermans* and *Anderson v. Anderson, supra*. The court said:

"At the time when this conveyance was made, there was a subsisting lease, the privilege of renewal existed, and whether it should be renewed or not was at the option of the lessee. She having exercised that option by a renewal, there was at all times an existing continuing liability upon her part to pay the rent secured thereby. This condition constituted the plaintiffs creditors, within the meaning of the statute, at the time the transfer was made."

We are not impressed with the argument based upon a supposed analogy between debts which avoid a voluntary conveyance and debts provable in bankruptcy. It is true that the Federal courts have held that rent falling due after the filing of a petition in bankruptcy is not a debt provable in bankruptcy, but that is because the contract to pay rent, the lease, is not terminated by the bankruptcy, but is still a subsisting obligation against the bankrupt after his discharge. In the case chiefly relied upon by the appellant in this connection, it is said:

"The date of filing the petition in bankruptcy is intended to mark the line of separation between debts that are provable and those that not provable against the bankrupt's estate. Those that are not provable remain subsisting obligations of the bankrupt, and he is not released therefrom by his discharge. The adjudication of bankruptcy does not dissolve contractual relations between the bankrupt and others. It takes from him his property and devotes it to the payment of debts which are provable under sections 63a and 63b of the bankruptcy act, but it does not absolve him from the obligations of contracts." *Colman Co. v. Withoft*, 195 Fed. 250.

The decision was thus squarely based upon § 63 of the bankruptcy act, which defines a provable debt as "a fixed liability . . . absolutely owing at the time of the filing of the petition against him." U. S. Compiled Statutes, p. 3447. The statute here involved contains no such narrowing clause. The distinction between a debt absolutely owing and an existing equity is plain. The analogy assumed is in fact wanting. The distinction is further emphasized in

*Bray v. Cobb,* 100 Fed. 270, 274, where the court, placing its decision distinctly upon § 63a, subd. 1 of the bankruptcy act, says:

"In a court of equity many questions might arise, and conclusions be reached, which are not tenable in a court of bankruptcy. Due regard being had to the rights of other creditors, keeping in view that the ordinary contractual relations of the bankrupt are terminated by the adjudication, and giving consideration to the words of the statute, the claimant, if entitled to prove any claim based on the agreement, is only entitled to prove for what was absolutely due at the time of the filing of the petition in bankruptcy."

We have examined the many authorities cited by counsel for appellant, but a further review of them would serve no useful purpose, since we deem the authorities we have noted determinative of the question here involved.

The only question arising upon the evidence which we are permitted by the state of the record to review is the admission by the trial court on cross-examination of appellant's husband of a financial statement made by him to the Washington Trust Company, which was agent for Fletcher and Stebbins. In this statement he represented that he had property of an aggregate value of about $41,000. It is true this statement was made in order to procure a loan, and not in view of the lease afterwards entered into through the trust company as agent. The evidence was, however, properly admissible on cross-examination. The purpose of the statement did not affect its admissibility.

Notwithstanding the fact that the absence of proper exceptions to the findings precludes a reversal for insufficiency of the evidence, we have examined the record with care and we are satisfied that the findings of the trial court are sustained by it in any event.

The decree is affirmed.

CROW, C. J., FULLERTON, MORRIS, and MAIN, JJ., concur.