[No. 30704. Department Two. May 19, 1949.]

SHIGERU OSAWA et al., Plaintiffs, v. CHARLES ONISHI et al., Defendants, GOLDEN LAND INVESTMENT COMPANY et al., Respondents, J. T. HALIN, Appellant.[1]

[1]Reported in 206 P. (2d) 498.

*John D. MacGillivray* and *Lawrence H. Brown,* for appellant.

*Koenigsberg & Sanford,* for respondent Golden Land Investment Company.

*E. K. Marohn,* for respondent William Chong.

JEFFERS, C. J.—In order that an understanding may be had of the situation existing at the time garnishment proceedings were instituted, and the interpleader action commenced which resulted in the judgment being entered from which this appeal was taken, we shall briefly state the proceedings which led up to and formed the basis of the garnishments.

On August 28, 1946, Golden Land Investment Company, a corporation, instituted an action against Charles Onishi and Frieda Onishi, his wife, in the superior court for King county, on two promissory notes, one executed February 26, 1943, for twenty-five hundred dollars, due August 26, 1943, and one executed in October, 1943, for twelve hundred

fifty dollars, due April 23, 1944. On September 16, 1946, William Chong instituted an action against the Onishis in the superior court for King county, seeking recovery on an installment note for nine thousand dollars, executed May 24, 1946, with balance due February 24, 1947.

In both of the actions above referred to, garnishments were issued, directed to Shigeru Osawa, Yoneko Funamori and Seizi Funamori, her husband, and Ted Takahashi, as garnishee defendants. The writs were issued and served in the Golden Land Investment Company case first. In each case, the garnishee defendants answered that they had previously been indebted to Onishi in the sum of $17,203.25, which represented the balance due on two real-estate contracts covering the purchase of the Empire and Globe hotels, in Spokane, Washington; that the contracts had been, by instruments dated March 8, 1946, sold, assigned, and transferred by Onishi to D. J. MacGillivray, Jr., and J. T. Halin; and that the garnishee defendants, when served with the writs of garnishment, were not, nor have they since become, indebted to Onishi.

The answer in each case was controverted. This action in interpleader was then commenced by the garnishee defendants as plaintiffs, against Charles Onishi and wife, Golden Land Investment Company, a corporation, William Chong, D. J. MacGillivray, Jr. and J. T. Halin, as defendants.

The balance due on the two real-estate contracts above referred to, including interest, in the sum of $18,531.65 was deposited by the plaintiffs with the clerk of the court, and plaintiffs asked that the court determine the rights, claims, and interests of the defendants in and to such deposit.

This interpleader action was consolidated with the action of Golden Land Investment Company against Onishi for trial, and the actions were tried before Honorable J. T. Ronald, one of the judges of the superior court for King county. Onishi defaulted in the action instituted by Golden Land Investment Company against him, and after proof taken, the court found that Onishi was indebted to such company on the notes sued on. In the interpleader action,

the court, on April 9, 1948, made and entered findings of fact, conclusions of law, and judgment. From the judgment entered, which was favorable to Golden Land Investment Company, defendant J. T. Halin alone has appealed.

Neither the findings of fact nor the conclusions of law make any reference to defendant William Chong, other than in the introductory statement, which is to the effect that such defendant appeared in person and by his attorney, E. K. Marohn. The judgment entered makes no reference to William Chong nor to any claim of such defendant, but only purports to settle the issues as between appellant Halin and respondent Golden Land Investment Company. The record contains no cross-appeal by defendant Chong, nor has he filed any briefs herein.

Appellant makes sixteen assignments of error, which are in entering findings of fact Nos. 6, 9, 10, 11, 12, 13, 14, 15, and 16; in entering conclusions of law Nos. 1, 2, and 3; in awarding the interpleader plaintiffs an attorney's fee of five hundred dollars to be satisfied from the funds on deposit with the clerk; in denying appellant's motion for judgment notwithstanding the oral decision of the court; and in entering the judgment of April 9, 1946, from which this appeal is taken.

It is the general contention of appellant that the findings of fact made and entered by the trial court are not supported by the evidence; that this is in fact an action to set aside a conveyance of an interest in realty, and is therefore an equitable action; that, this being so, findings of fact made by the court are not binding to the same extent that they are in a law action, citing *Eckley v. Bonded Adjustment Co.*, 30 Wn. (2d) 96, 190 P. (2d) 718.

We recognize the rules above stated relative to findings of fact in equity cases, and we set out more in detail certain principles which we have announced and followed relative to findings of fact made in such cases. We quote from *Columbia Lbr. Co. v. Bush*, 13 Wn. (2d) 657, 666, 126 P. (2d) 584:

"The rule may be restated as follows: Findings of fact are not required in equity cases, but if they are made by the

trial court they will be considered and given great weight if the statement of facts is included in the record before us.

"Equity cases are tried *de novo* in this court. In so considering the case, it is our duty to make an independent examination of all of the evidence and all of the circumstances surrounding the various parties to the action as disclosed by the statement of facts, and from that examination decide what findings should have been made.

"If the determination of the cause depends upon testimony which is in serious conflict, or upon evenly balanced evidence, this court will not disturb the findings of the trial court unless other factors are present which compel us to reach a contrary conclusion. However, if this court ascertains from the entire record that the findings are not supported by a fair preponderance of the evidence, they will be disregarded."

See, also, *Rapp v. Ellis*, 14 Wn. (2d) 659, 663, 129 P. (2d) 545; *Widman v. Maurer*, 19 Wn. (2d) 28, 141 P. (2d) 135; *Wingard v. Pierce County*, 23 Wn. (2d) 296, 300, 160 P. (2d) 1009.

We have examined the evidence introduced in this action, and after such examination we have concluded that the findings of fact, with some exceptions, as made and entered by the court, are supported by a fair preponderance of the evidence. In reaching this conclusion, we are mindful of the fact that this action sounds in fraud. Having concluded as above indicated, we do not deem it necessary to discuss or refer to the evidence other than as may appear hereinafter in this opinion, and we adopt the following findings of fact as the material facts in this case:

"III. That the sum of $18,531.65 has been deposited with the clerk of this court by the plaintiffs herein, to be paid out as the court may direct.

"IV. That the defendant Golden Land Investment Company claims an interest in said funds by virtue of writs of garnishment issued in King county superior court cause No. 376584 and served on plaintiffs herein; that defendant Golden Land Investment Company's claim is for the sum of $2500.00, together with interest thereon at 6 per cent per annum from August 26, 1943, and for the further sum of $1250.00, together with interest thereon at 6 per cent per annum from April 19, 1944; that said sums are due the

Golden Land Investment Company from Charles and Frieda Onishi; that the Golden Land Investment Company garnisheed the plaintiffs herein as debtors of said Charles and Frieda Onishi.

"V. That defendants D. J. MacGillivray, Jr. and J. T. Halin claim they are entitled to the whole of said funds by virtue of assignments dated March 8, 1946 from Charles and Frieda Onishi, transferring to them the indebtedness due from the plaintiffs herein.

"VI. That by said assignments, an indebtedness in the principal sum of $17,203.25, together with interest thereon at the rate of 4½ per cent per annum from November 5, 1945 was transferred for a consideration not in excess of $11,800.00.

"VII. That the indebtedness of the plaintiffs herein arose out of a sale to them by Charles and Frieda Onishi of all the sellers' interest in the Globe and Empire Hotels in Spokane, Washington, by contracts dated November 5, 1945.

"VIII. That Charles and Frieda Onishi, between November 5, 1945 and March 8, 1946, received from plaintiffs herein as part payment for said sale the sum of $33,000.00, out of which, after certain deductions were made, they received approximately $25,000 in cash, none of which was used to satisfy their creditors; that, in addition, Charles and Frieda Onishi failed to apply to the debt due from them to the Golden Land Investment Company, any of the $11,800.00 received by them from D. J. MacGillivray, Jr. and J. T. Halin as consideration for the assignments of their claim against the plaintiffs herein, although for a long period of time they had made repeated promises to pay said debt.

"IX. That prior to and at the time of the assignments from Charles and Frieda Onishi to D. J. MacGillivray, Jr. and J. T. Halin, Charles and Frieda Onishi were heavily indebted to the Golden Land Investment Company and others and were being seriously pressed by their creditors for payment; that Charles and Frieda Onishi were offering their claim against the plaintiffs to many people at a great discount for the purposes of reducing said claim to cash and hindering, delaying or defrauding their creditors; that such offerees would not purchase because of the renowned proclivities of the obligees as adepts at incurring obligations and evading payment; that the assignments of said claim from Charles and Frieda Onishi to D. J. MacGillivray, Jr. and J. T. Halin were executed by the Onishis with the intent to hinder, delay or defraud their creditors; that the

Golden Land Investment Company was a creditor of Charles and Frieda Onishi at the time said assignments were executed.

"X. That D. J. MacGillivray, Jr., at the time of and before the assignments to him and J. T. Halin, . . . knew Charles Onishi well for what he was, an adept at incurring obligations and refusing to pay them; that D. J. MacGillivray, Jr. had, himself, prior to the said assignments, large and extensive business dealings with Charles Onishi, and had experienced great difficulty in collecting debts due him from Charles and Frieda Onishi and had been forced to sue Charles and Frieda Onishi in the superior court of the state of Washington for Spokane County on four to six different debts due him, and had received several checks at different times drawn by Charles Onishi, which checks had been returned marked 'n.s.f.'.

."XI. That Thomas Malott, attorney representing J. T. Halin in connection with said assignments from Charles and Frieda Onishi, had represented another client in a suit against Charles and Frieda Onishi for $7,500.00.

"XII. That the fraudulent efforts of Charles and Frieda Onishi to evade their creditors were a matter of common knowledge among their acquaintances both in Spokane and Seattle, and their indebtedness, a matter of newspaper publicity; that by reason of said common knowledge, people to whom the said Charles and Frieda Onishi offered to sell their indebtedness due from the plaintiffs herein refused to have anything to do with said offer, even though a very substantial discount was involved, and even though the obligors' credit rating was 100 per cent or par.

"XIII. That D. J. MacGillvray, Jr. and J. T. Halin both knew that Charles and Frieda Onishi had disposed of virtually all their assets except this claim against the plaintiffs herein. . . .

"XIV. That the plaintiffs herein, the obligors whose indebtedness was assigned, were perfectly good credit risks and their contractual obligations were worth par; that this was known to D. J. MacGillivray, Jr. and J. T. Halin.

"XV. That the Globe and Empire Hotels in Spokane, Washington at the time in question had a ready market value much in excess of the indebtedness against said hotels; that defendant J. T. Halin knew this, having investigated and inspected said hotels before he and D. J. MacGillivray, Jr. purchased the notes secured by the contracts on said hotels and knew, therefore, that the notes and con-

tracts purchased by him and D. J. MacGillivray, Jr. were adequately secured."

The court concluded:

"I. That the purported assignments dated March 8, 1946 from Charles and Frieda Onishi to D. J. MacGillivray, Jr. and J. T. Halin of the indebtedness due from the plaintiffs herein were fraudulent and void as to the Golden Land Investment Company.

"II. That the claim of the Golden Land Investment Company is entitled to be satisfied in full out of the funds on deposit with the clerk of this court, prior to all other claims.

"III. That the Golden Land Investment Company is entitled to a judgment or decree directing the clerk of this court to pay to it the full amount of its claim together with its costs; provided, however, that such payment shall not be made until after the time for appeal to the supreme court of the state of Washington has elapsed, or, in the event of appeal to said supreme court, until said appeal is determined."

Judgment was entered, which, in so far as material, provides:

"Now, therefore, it is hereby

"ORDERED, ADJUDGED and DECREED that the defendants D. J. MacGillivray, Jr. and J. T. Halin may draw immediately from the funds heretofore deposited by the plaintiffs herein with the clerk of this court any sums now on deposit in excess of $14,000.00 and that the sum of $14,000.00 shall remain on deposit with the clerk of this court until the time for appeal from this judgment to the supreme court of the state of Washington has elapsed, or, in the event of such appeal, until final disposition of this cause, and that, in the event the time for such appeal has elapsed without any appeal having been taken from this judgment, the defendant Golden Land Investment Company shall be entitled to draw out of said funds, prior to any and all other claims, a sufficient sum to satisfy its judgment in King county superior court cause No. 376584, in the sum of $4737.70, together with interest due on said judgment and together with a sufficient sum to satisfy its costs and disbursements in this action, and the plaintiffs herein shall be entitled to draw out of said funds, after the claim of the Golden Land Investment Company has been satisfied, its judgment for a

reasonable attorney's fee in said cause No. 376584, in the sum of $500.00, together with interest due on said judgment."

We have before us, then, for consideration, the question of whether the findings support the conclusions of law and judgment entered.

The legislature of the state of Washington, in 1945, passed what is known as the uniform fraudulent conveyance act, being Laws of 1945, chapter 136, p. 345 (Rem. Supp. 1945, §§ 5854-40 to 5854-52, both inclusive). Prior to the passage of the uniform fraudulent conveyance act of 1945, this court recognized that the statute of 13 Eliz., chapter 5, was in force in this state as a part of the common law (*Wagner v. Law*, 3 Wash. 500, 28 Pac. 1109, 29 Pac. 927, 28 Am. St. 56, 15 L. R. A. 784), which statute provided that all conveyances made with intent to hinder, delay, and defraud creditors and others of their just and lawful actions, suits, debts, accounts, damages, etc., should be deemed and taken as void and of no effect.

In those states where a similar statute is in force, or which recognize this statute as being part of their common law, it is the almost uniform holding that a person having a claim against another for damages sounding in tort is a creditor of that other within the meaning of the rule, and this holding we think is supported by the better reasoning. *Bates v. Drake*, 28 Wash. 447, 455, 68 Pac. 961. In *Allen v. Kane*, 79 Wash. 248, 252, 140 Pac. 534, after referring to the statute of 13 Eliz., chapter 5, and stating that it was a part of the common law of this state, we said:

"According to the decided weight of authority, the term 'creditor,' as used in this connection, embraces others than those who are strictly and technically creditors in the narrow sense of that term. Bump, Fraudulent Conveyances (4th ed.), § 502. It includes not merely the holder of a fixed and certain present debt, but every one having the right to require the fulfillment of any legal obligation, contract, or guaranty, or a legal right to damages capable of judicial enforcement, whether growing out of contract or tort."

We quote further from the opinion in the *Allen* case:

"We have also held that one taking a voluntary conveyance, though, at the time of the conveyance, the claim of the creditor had not yet been reduced to judgment, cannot, as against such claim, be considered an innocent purchaser, and that thereafter, when the claim of the creditor shall have been reduced to judgment, the creditor may assert it against one taking a voluntary conveyance of the property. *Bates v. Drake,* 28 Wash. 447, 68 Pac. 961; *Sallaske* v. *Fletcher,* 73 Wash. 593, 132 Pac. 648."

Relative to the proof of fraud, we also stated in the *Allen* case:

"It is true that fraud is never presumed, and, where alleged, must be proved by clear and convincing evidence. It is sometimes said that fraud is easily charged and hard to disprove. This is true, but it is also true that fraud is easily committed and hard to prove. A fraudulent intent is seldom confessed or blazoned upon a banner. In most cases, it can only be proved by circumstantial evidence, and there is no circumstance more persuasive and more often recognized by the courts as convincing than the fact that a debtor, on the eve of a suit against him, transfers all of his property to another, thus placing it beyond the reach of execution."

The opinion in the *Allen* case, *supra,* written by Judge Ellis, also deals with the question of a conveyance made to an innocent purchaser with a fraudulent design *on the grantor's part,* where the full purchase price is not paid at the time of the conveyance.

The uniform fraudulent conveyance act is declaratory of the common law, and is practically a restatement of the statute of 13 Eliz. *Westminster Sav. Bank v. Sauble,* 183 Md. 628, 39 A. (2d) 862 (decided in 1944). There is, in our opinion however, a very important difference between the two statutes. The statute of 13 Eliz. did not, by express terms, condemn transfers which wronged the transferor's creditors, in the absence of *actual intent to defraud* such creditors. However, courts, in applying the statute, sensitive to the needs of justice and commerce, struck many such transfers down, notwithstanding lack of proof of an

actual fraudulent intent, by invoking certain presumptions of law as to intent.

"While the decisions under the Statute of 13 Elizabeth thus often achieved desirable results, the resort to presumptions of varying and conflicting effect introduced a highly confusing element into the law of fraudulent conveyances. In an attempt to avoid the pitfalls of presumptions as to intent, the draftsmen of the Uniform Fraudulent Conveyance Act simply shunned them. Under that Act certain conveyances are declared to be fradulent regardless of any actual intent to defraud." 4 Collier on Bankruptcy (14th ed.) 296.

The author last referred to makes a further statement at p. 301 of the same volume:

"On the problem of intent it is proper to believe that even under § 67d(2) (d) the finding of the requisite intent may be predicated upon the concurrence of facts which, while not direct evidence of actual intent, lead to the irresistible conclusion that the transferor's conduct was motivated by such intent. Rarely will a fraudulent transferor disclose his fraudulent intent in a mode capable of direct proof."

■ Our statute, Rem. Supp. 1945, § 5854-46, states:

"Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors, is fraudulent as to both present and future creditors."

Having concluded that the findings of fact which we have set out are supported by a preponderance of the evidence, and the trial court having found that the assignments from Charles and Frieda Onishi to MacGillivray and Halin were executed by the Onishis with the intent to hinder, delay and defraud their creditors, and that the Golden Land Investment Company was a creditor of the Onishis at the time such assignments were executed, we are of the opinion that, under the section last above mentioned, the trial court's findings support the first conclusion of law.

■ Having determined that the Onishis executed the assignments with intent to defraud, we must next deter-

mine the respective rights of Golden Land Investment Company as such creditor and appellant. We are of the opinion those rights, under the facts in this case, are determined by Rem. Supp. 1945, § 5854-48, which provides:

"(1) Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser,

"(a) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or

"(b) Disregard the conveyance and attach or levy execution upon the property conveyed.

"(2) A purchaser who without actual fraudulent intent has given less than a fair consideration for the conveyance or obligation, may retain the property or obligation as security for repayment."

The trial court found (findings Nos. 14 and 15) that the obligors whose indebtedness was assigned were perfectly good credits risks, and that their contract obligations were worth par; that the notes secured by the contracts on the Globe and Empire hotels were adequately secured.

We are of the opinion that it is a reasonable conclusion at which to arrive from the findings, and especially findings Nos. 14 and 15, that, under all the circumstances of this case, a reasonable consideration was not paid by MacGillivray and Halin for the notes and the assignments of the contracts here in question. The term "fair consideration" is defined by Rem. Supp. 1945, § 5854-42, as follows:

"Fair consideration is given for property, or obligation,

"(a) When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

"(b) When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained."

An examination of cases from other jurisdictions where this section of the uniform fraudulent conveyance act has been construed will show that an answer to this question

is not found by a determination of the thing sold and the price received in very precise scales, "but all circumstances considered, there should be a reasonable and fair proportion between the one and the other." 24 Am. Jur. 179, 180, Fraudulent Conveyances, § 22; *Bianco v. Lay*, 313 Mass. 444, 453, 48 N. E. (2d) 36. But, as stated in *McCaslin v. Schouten*, 294 Mich. 180, 186, 292 N. W. 696:

"What constitutes 'a fair equivalent' or 'a fair consideration' under the fraudulent conveyance act must be determined from the standpoint of creditors. The debtor might be satisfied to give his assets to a stranger or to exchange them for some worthless chattel. But the law will not permit him to do so if he thereby renders himself uncollectible to the detriment of his creditors. In general the test would seem to be whether the 'conveyance' by the debtor, which 'includes every payment of money' (3 Comp. Laws 1929, § 13392 [Stat. Ann. § 26.881]), renders the debtor execution proof."

We reaffirm that we are of the opinion that the facts as found by the trial court in this case were sufficient to establish that appellant did not pay a fair consideration for the notes and contracts assigned to MacGillivray and Halin. We do not think the evidence in this case would support a finding· to the effect that appellant purchased these contracts with an actual intent to defraud creditors. Under these facts, it is our opinion that the rights of respondent creditor, it being the only creditor with which we are here concerned, and appellant are determined by Rem. Supp. 1945, § 5854-48, subsection (2), which reads:

"A purchaser who without actual fraudulent intent has given less than a fair consideration for the conveyance or obligation, may retain the property or obligation as security for repayment."

■ Having concluded as above indicated, we are 'of the opinion that the trial court erred in making its conclusions Nos. 2 and 3. We are of the opinion that, based upon the findings to which we have hereinbefore referred, the court should have concluded that, because of the fact that MacGillivray and Halin did not take these notes and assignments with *actual intent* to defraud, but did pay less than a fair

consideration for such notes and assignment, appellant is entitled to receive from the money deposited with the clerk of the court the amount actually paid by MacGillivray and Halin for the notes and assignments, namely, $11,800; that respondent Golden Land Investment Company is next entitled to receive and be paid from the money so deposited the sum of $4,737.70, together with interest thereon at the rate of six per cent per annum from the date of the judgment, together with costs.

While we appreciate that, under Rem. Rev. Stat., § 200 [P.P.C. § 60-3], the court may, in its discretion, determine the liability for costs of the action, we are of the opinion that, under the facts in this case, the court was without authority to order that the attorney's fees allowed to respondent interpleaders in this action be deducted from the funds deposited in court.

It will be noticed that by the judgment the court authorized MacGillivray and Halin to immediately draw from the funds deposited all sums in excess of fourteen thousand dollars. In order that there be no question of the intention of the court, it is our opinion that the deduction above authorized should be made upon the theory that there is still the sum of $18,531.65 in the registry of the court; that from this amount appellant Halin is entitled first to receive the sum of eleven thousand eight hundred dollars; that respondent Golden Land Investment Company is next entitled to receive and be paid the amount hereinbefore indicated; that, inasmuch as there are no other creditor's rights determined by this action, the balance of the money remaining in the fund, if any, after the payments have been made as above indicated, shall be paid by the clerk to appellant Halin.

We do not wish to be understood as determining in any manner any rights of respondent William Chong herein, as neither the findings nor the judgment make any reference to Chong, and no briefs have been filed on his behalf. It is apparent, therefore, that this court can make no disposition of any claim which William Chong may or may not have relative to the funds deposited by interpleaders.

560

The judgment of the trial court must be and it is hereby reversed, and the cause is remanded to the trial court with instructions to enter judgment in accordance with this opinion.

ROBINSON, SIMPSON, SCHWELLENBACH, and GRADY, JJ., concur.

