[No. 12686. Department One. August 5, 1915.]

GEORGE PETERSON, *Respondent*, v. BADGER STATE LAND COMPANY, *Appellant*, JOHN A. RANKIN *et al.*, *Defendants.*[1]

FRAUDULENT CONVEYANCES—BETWEEN HUSBAND AND WIFE—GIFT OR PREFERENCE. Where a husband conveyed all his community property to a corporation, formed for the purpose of holding it for his wife, who was the sole stockholder, equity will look to the intent, and regard it as a gift to the wife, rather than a preference, where the value of the property is so disproportionate to the alleged claim of the wife as to constitute a badge of fraud.

SAME—TITLE OF FRAUDULENT GRANTEE. In such a case, the wife, whether in person or by the corporation, is presumed to be a trustee, holding the legal title for the community.

SAME—BURDEN AND DEGREE OF PROOF. As against creditors of the husband, the burden of establishing the good faith of his conveyance to his wife is upon the party asserting the good faith, under Rem. & Bal. Code, § 5292; and the proofs must be clear, cogent, and convincing.

FRAUDULENT CONVEYANCES—TRANSACTION BETWEEN HUSBAND AND WIFE—EVIDENCE—SUFFICIENCY. A transaction whereby a husband and wife, just prior to entry of judgment against them on a community debt in the sum of $2,700, formed a corporation, in which the wife was the sole stockholder, and conveyed to it all their community property together with separate property of the wife, all of the estimated value of $12,000, for the purpose, as claimed, of raising money to pay the husband's debt of about $1,300 and to secure the wife for $3,200 rents of her separate property collected by the husband, must be regarded as a conveyance by the husband to the wife, and the burden of establishing the good faith of the transaction, as

[1]Reported in 150 Pac. 1187.

upon a sufficient consideration, by clear, cogent, and convincing evidence, is not met, where it appears that the property, if pledged at all, was pledged only as security for the $1,300 indebtedness, evidenced by a note which was a community debt, that the husband could give no accounting of the rents claimed to have been received, all or part of which were disbursed for living and family expenses for which the wife was primarily liable, the corporation was managed by the husband, and the wife did not testify in her own behalf; especially in view of the badge of fraud in that the value of the property transferred was disproportionate to the sum for which it was alleged to be pledged.

Appeal from a judgment of the superior court for Whatcom county, Pemberton, J., entered June 30, 1914, upon findings in favor of the plaintiff, in proceedings supplemental to execution, tried to the court. Affirmed.

*S. M. Bruce*, for appellant.

*W. E. Barnhart* (*Hurlbut & Neal*, of counsel), for respondent.

CHADWICK, J.—This is a proceeding supplemental to execution. The defendants were the owners of 320 acres of land in Douglas county, Washington. They traded it for property in Whatcom county, taking the difference in agreed values in a note and mortgage upon the Douglas county property for the sum of $3,500. This they afterwards sold to the respondent. Upon the maturity of the mortgage, respondent brought an action to foreclose, making the defendants Brill parties. The note had been indorsed in blank by defendant Mr. M. M. Brill. The foreclosure proceedings went to judgment and the property was sold. It was bid in for the sum of $1,500. A deficiency judgment was entered against the parties to the note and defendants for the sum of $2,725.39. The decree was rendered in March, 1912. Just prior to the time that the decree was entered, Brill and his wife organized the Badger State Land Company, and transferred to that company a farm in Idaho belonging to Mrs. Brill, being her separate property, and the following pieces of community property: two tracts of land in Whatcom

county; certain city lots in the city of Seattle; lots in the city of Sand Point, Idaho; 160 acres of land in Douglas county; and 200 acres of land in the state of Wisconsin. The property so conveyed was worth, clear of all encumbrances, according to the estimates made by Mr. Brill when examined as a witness, about $12,000.

Appellant seeks to justify the sale of the property and to exempt it from the lien of the judgment against the Brills, by asserting that, at the time the transfers were made, Mr. Brill was indebted to his brothers and sisters, the heirs of his deceased mother, in the sum of about $1,300; that his property was incumbered up to the limit; that he had no way of getting the money unless his wife put a mortgage on her separate property; that she first refused, but finally consented to do so, and that to secure her the corporation was organized, all of the community property transferred to it, and all of the stock issued to her with the exception of one share, which was given to a son in order to perfect the organization; that the appellant corporation then made a mortgage upon the Idaho farm that had belonged to Mrs. Brill for the sum of $1,700; that the payment of the amounts due to the estate of Brill's mother, and other expenses and some taxes and assessments against other property, absorbed the $1,700. Mr. Brill, who was the only witness, testifies further that the land belonging to his wife had been rented for six years, four years at $500 a year, and two years at $600 a year; that he had collected the rents and had not accounted to his wife; that the transfer of the property of the corporation was also intended to secure his wife for these sums, aggregating $3,200. The witness could give no account of the rent money which he claims to have collected and spent, except to say that it was spent for some good purpose, in part for living expenses and in part for the education of their son. After the organization of the corporation, defendant M. M. Brill became its manager and, so far as the testimony shows, his wife did not actively participate in its affairs unless there was some doubt about

a deal, when she was consulted and he says that her judgment would usually prevail. No records of the corporation are offered. We understand that none were kept. It is admitted that no books of account were kept that would be intelligible. Neither Brill nor his wife nor his son drew any salary for their services. Since the corporation was organized, moneys have been collected in rents and upon land contracts, and certain taxes and expenses have been paid.

Upon this state of facts, the trial judge found that the property was transferred as security; that the only charge upon it was the amount of the mortgage put upon the Idaho land; that enough has been collected from the community property and land contracts to fully pay the charge, and that nothing is now due thereon. It was decreed that a receiver be appointed and that he proceed to sell the property, or so much of it as might be necessary to pay the judgment.

Upon appeal it is contended that the transaction was a lawful one; that the Badger State Land Company owns the property free of the lien of respondent's judgment, or, if it be not so held, that the Badger State Land Company is entitled to an accounting and to an equitable lien for the $1,350, paid to the heirs of defendant's mother, the $3,200 collected by defendant in rents from the separate property of Mrs. Brill, and all assessments and interest paid out for the conservation and protection of the property.

We think the court was clearly right in holding that the property, if pledged at all, was pledged only as security for the payment of the $1,350. This, upon the theory that the property other than the farm in Idaho was, at the time of the transfer, and is now, community property.

We shall not follow counsel in their discussion of the law and the authorities sustaining the proposition that a person owing two creditors or more may prefer one to the exclusion of another, and that if a wife be a creditor the husband may prefer his wife. The debt to the estate of Mr. Brill's mother, which was evidenced by a promissory note, and all other sums

alleged to be owing, other than the $3,200, which we shall discuss later, were community debts, to the payment of which the wife was equally bound with her husband.

A husband owing community debts cannot convey his interest in community property to his wife, or to a corporation organized for the purpose of holding it for her, she being the sole stockholder, and sustain himself by saying that she has become a separate entity, holding property as a separate estate, and that he is working for her as manager, either in her personal or corporate capacity; for, clearly, equity, which looks to the intent and not to the form of a transaction, will see in such manipulation a gift and not a preference. So will equity—and this proceeding is in the nature of an equitable proceeding—regard the value of the property transferred, and if disproportionate to the sum alleged to be owing and for which it is given in payment, it will be regarded as a badge of fraud.

When the trial judge declared that he would find that the property was conveyed as security only, an adjournment was taken upon the motion of defendants Brill and the appellant, the Badger State Land Company, for the purpose of assembling such papers, documents and receipts as might be relevant and pertinent to an accounting, it being the contention of counsel that if the property was held as security, the Badger State Land Company was entitled to a credit for all sums paid out in interest, taxes and assessments. Much testimony was received upon this theory, but we think that the testimony was improper. In so far as the relation of the defendants Brill to the property sought to be charged is concerned, it is the same as if no transfer had been made to the Badger State Land Company. The wife, whether regarded as a person or as a corporation, is presumed to be a trustee holding the legal title for the community. Rem. & Bal. Code, § 5917 (P. C. 95 § 27); *Weymouth v. Sawtelle*, 14 Wash. 32, 44 Pac. 109.

The rule that a mortgagee is entitled to recover moneys paid out to protect the legal title might apply in ordinary cases, but it is not so where the mortgagee, in so far as third parties are concerned, is the mortgagor as well. Whether the wife could claim the whole of the property as against her husband upon the theory of gift, we are not called upon to decide. The charge of the $3,200 rent, formerly collected from the tenants of Mrs. Brill's property, cannot be sustained as a prior charge upon the community property or passed to the credit of the appellant.

The transaction, when taken by its four corners, is a conveyance by the defendant M. M. Brill to his wife. To sustain such a transfer as upon a sufficient consideration, the proofs must be clear, cogent and convincing. The burden is upon the parties asserting the good faith of the transaction. Rem. & Bal. Code, § 5292 (P. C. 95 § 3).

Under the doctrine of the case of *Smith v. Weed*, 75 Wash. 452, 134 Pac. 1070, and *Sallaske v. Fletcher*, 73 Wash. 593, 132 Pac. 648, Ann. Cas. 1914 D. 760, 47 L. R. A. (N. S.) 320, an existing creditor is one having an "existing equity."

It seems clear to us that appellant has not sustained the burden of proof. The claim now asserted was not treated as a debt at the time the property was conveyed. A part, and possibly all, of the rents had been spent for living expenses of the family and the education of the child, for which the wife was primarily liable (Rem. & Bal. Code, § 5931 [P. C. 95 § 23]) ; and, granting that the community would be liable for any of the rent money used to pay taxes and interest, there was no attempt then or now to segregate and ascertain the true amount. No note was given or liability acknowledged. The wife was not a witness in her own behalf or on behalf of the appellant, and the husband, who has managed the family affairs before and after the property was conveyed to appellant, confesses his inability to account in any way or to any intelligible degree for the rent money. What-

ever claim the wife or appellant may have on account of advances to the community, they cannot avail under the statute and this record as against the claims of one having an "existing equity."

Affirmed.

MORRIS, C. J., MOUNT, MAIN, and HOLCOMB, JJ., concur.