[No. 14388. Department Two. January 6, 1919.]

## F. V. Fisher et al., Appellants, v. John A. Ward et al., Respondents.[1]

Fraudulent Conveyances (92, 97)—Transaction Between Relatives—Preference—Consideration—Evidence—Sufficiency. Transfers by a failing debtor of all his available resources to his daughter in consideration of a previous promise to pay her $25 a month as housekeeper during the previous five years, are shown to be fraudulent as to creditors, where the proof of the agreement was not satisfactory and it appears that the property was worth considerably more than his daughter's claim, and he continued to exercise dominion over it, negotiating a mortgage upon it and offering part of it to a creditor in settlement of the indebtedness; since preference to one in such relation requires satisfactory proof of good faith and consideration, subject to the closest scrutiny.

Appeal from a judgment of the superior court for King county, Jurey, J., entered March 3, 1917, in favor of the defendants, dismissing an action to set aside deeds and to subject property to the lien of judgments, tried to the court. Reversed.

*Melville Monheimer* and *Jay C. Allen,* for appellants.

Fullerton, J.—The appellants, composing the two partnership firms of M. & K. Gottstein and Kreielsheimer Brothers, were judgment creditors of the respondent John A. Ward to the extent of $2,166.55.

[1]Reported in 177 Pac. 682.

Prior to the rendition of their judgments, Ward and his wife conveyed to their daughter, Ethel, a tract described as the north half of the northeast quarter of the southeast quarter of section 16, township 22 north, range 5 east, W. M., and also a tract described as lot 2, section 27, township 22 north, range 5 east, W. M., containing in all about thirty-seven and one-half acres. The tracts were variously estimated as of a value of $4,700 to $7,700, and were subject to an incumbrance of $2,500. The purported consideration was the sum of $1,500, due the daughter under a contract for personal services at $25 per month for a period of five years, in acting as housekeeper for her parents and taking care of an invalid mother. At the time of the conveyance, the only other property owned by Ward was a lot in the Georgetown district of Seattle, Washington, upon which was located a public garage and his family home. This property was variously estimated as worth from $12,000 to $30,000, but was incumbered by a $12,000 mortgage and Ward's right of homestead exemption. In addition to the indebtedness due to the appellants, Ward was indebted to other parties upon deficiency judgments in sums of $4,914.10 and $1,636.55. The appellants began an action to set aside the conveyances made by Ward to his daughter and to subject the property to their liens, upon the ground that the transfers were voluntary and fraudulent. On a trial before the court, decree was rendered in favor of the respondents and dismissing appellants' action.

The record shows that the appellants, M. & K. Gottstein, and Kreielsheimer Brothers, were wholesale liquor dealers, with whom Mr. Ward had dealt for a number of years in purchasing liquors for a saloon conducted by him in Georgetown, the dealings between the parties being represented by open accounts

upon which Ward from time to time made payments. By reason of the state prohibition law, which was to go into effect January 1, 1916, thereby requiring saloons to close business by that date, the appellants, in the year 1915, ceased to extend further credits to Ward, selling him goods only for cash, and frequently urging him to liquidate their outstanding accounts against him. During this period Ward was in straitened circumstances and unable to meet numerous maturing debts. On May 27, 1915, a mortgage by him was foreclosed for the sum of $13,500, interest and costs, and the mortgaged property sold, leaving a deficiency judgment of $4,914.10, under which other property was levied upon and sold on November 22, 1915. A suit to foreclose another mortgage for $4,000 was commenced July 16, 1915, and the property sold under foreclosure on November 13, 1915, leaving a deficiency judgment of $1,636.55. On July 14, 1915, a suit to foreclose a $12,000 mortgage upon what is known as the Georgetown garage property was commenced, but was subsequently discontinued upon Ward's paying the interest, amounting to $420, together with costs and attorney's fees. This mortgage was thereupon extended and is still outstanding. The only other realty owned by Ward at this time was that which he conveyed to his daughter in October, 1915, consisting of two tracts before described. Upon this latter property, a mortgage of $600 was placed after it was put in the daughter's name. The appellants, in the year 1916, issued executions upon their judgments, upon which a return of *nulla bona* was made.

While the evidence as to the value of the home property varied somewhat widely, we are satisfied that the property at a forced sale would have failed to realize more than the indebtedness thereon, and that, at the time the deed to the daughter was executed, Ward was

possessed of no available property capable of being applied on his indebtedness, other than that which was turned over to her.

The question then is, was the daughter such a creditor as to render valid a preference to her over other creditors. On this phase of the case, the only testimony is by the daughter, the father not having testified on the particular question. Her testimony is positive and is uncontradicted, except it may be inferentially. Her demeanor as a witness, however, was unsatisfactory in some particulars, owing to her refusal to answer questions, apparently under an apprehension that she might be led thereby into damaging admissions. The purport of her testimony was that she abandoned the study of art, which she had planned to pursue, and took up household service at the insistence of her father, for which she was to be compensated at the rate of $25 per month; that an agreement therefor was entered into with her father when she was eighteen, and thus of legal age to contract; that she had never been paid, but had been given her board and clothing and supplied with spending money by her mother; that, at the time of the conveyance to her, she had served for a period of five years, entitling her to $1,500; that, upon her demand for her remuneration, her father turned over to her the property in question, which she admitted was worth $700 more than her claim; that her mother was an invalid, and the employment of a housekeeper would have been necessary if she had declined to serve in that capacity. On the other side, it appears that the father conducted the negotiations by which the mortgage of $600 was placed on the property, and that he banked the money in his own name and seems to have had the handling of it, although the daughter testifies that the money was obtained for her benefit, and a portion of

it was shown to have been expended in improving and caring for the property standing in her name. A further pertinent fact to be noted is that, after this transfer by the father to the daughter, the father tendered to his creditor Kreielsheimer Brothers one-half of the twenty-acre tract subject to the $600 mortgage, in settlement of his judgment indebtedness to that firm.

It seems to us that the transaction has many of the badges of fraud. The debtor, while in failing circumstances and pressed by his creditors, transferred to his daughter his only available resources, and still continued to exercise dominion over the property following its transfer. The transfer was made for an alleged past consideration of a promise to pay $25 per month, upon which not a single monthly payment had been made in a period of five years. The value of the property transferred was considerably in excess of the alleged claim of the daughter; and, more than this, the proof of the contract indebtedness fell far short of being satisfactory and convincing. While it is true that a failing debtor is privileged to prefer a member of his family to the exclusion of other creditors, it can be sustained only in case of satisfactory proof of good faith and upon a *bona fide* indebtedness to such member. And it is the prevailing rule in this country that the relationship of parent and child is a circumstance which requires a conveyance by an insolvent parent to his child to be subjected to the closest scrutiny. Taking into consideration all the facts shown in the record, we are satisfied that a presumption of fraud is clearly presented by the evidence, and that it has not been satisfactorily overcome by the countervailing evidence. Moreover, the consideration is based upon an alleged promise to pay for the natural services of the daughter as a member of the

household, the services being such only as are customarily rendered by a child dwelling under the parental roof and who was otherwise provided with support and maintenance by her parents.

The judgment of the trial court is reversed, with instructions to subject the property to the liens of the respondent's judgments, subject to the several mortgages thereon.

MAIN, C. J., PARKER, MOUNT, and HOLCOMB, JJ., concur.