[No. 25658.   Department One.   August 6, 1935.]

*In the Matter of the Estate of* L. I. BARBEE, *Deceased.*[1]

[1]Reported in 47 P. (2d) 1023.

*Bausman, Oldham, Cohen & Jarvis* and *Simon Wampold, Jr.,* for appellant.

*Velikanje & Velikanje* and *Clark & Grady,* for respondent.

BEALS, J.—Lester I. and Ellen C. Barbee were for many years husband and wife, residing in Yakima county. Mr. Barbee owned a considerable block of stock in the Buena State Bank, of which he was a director. November 4, 1932, the state supervisor of banking, petitioner and appellant herein, took over the bank as an insolvent institution.

November 24th following, Mr. Barbee died, and thereafter his will was admitted to probate and the appointment of his widow, Ellen C. Barbee, as execu-

trix thereof was confirmed by the court. Mrs. Barbee qualified as such executrix and ever since has been and now is acting as such. An inventory of the property of the estate was regularly filed and appraisers appointed, who valued the same at a little over $15,300. The estate is admittedly insolvent, claims against the same having been filed in the aggregate amount of forty thousand dollars.

The supervisor of banking filed a claim based upon three items of indebtedness: Seventy dollars, with interest, upon a promissory note executed by Mr. Barbee in favor of the bank; $4,900, being the superadded liability declared against the stockholders because of the insolvency of the bank, based, in this instance, upon Mr. Barbee's ownership of forty-nine shares of the bank's capital stock; $17.33 upon a book account. This claim was regularly allowed by the executrix as a valid obligation due from the estate.

During the year 1906, Mr. Barbee, with community funds, purchased a tract of land in Yakima county, containing a little less than nineteen acres, upon which the family home was established. October 31, 1932, Mr. Barbee, being then very ill, deeded this property to his wife. There can be no question but that, at this time, Mr. Barbee was insolvent, as was also the community estate composed of himself and his wife.

April 12, 1934, the supervisor filed in the probate proceeding his verified petition, praying *inter alia* that the deed above mentioned to Mrs. Barbee from her husband be vacated and set aside and the property covered thereby be declared to be property of the estate and subject to the community indebtedness, including the claim filed by the supervisor. A citation was issued upon this petition, and, Mrs. Barbee having regularly appeared in response thereto, the matter was heard by the court commissioner, who denied peti-

tioner any relief. Upon review before the superior court of the decree entered by the commissioner, the decree was affirmed and the prayer of the petition denied. From an order dismissing the petition with prejudice, the petitioner has appealed.

Mrs. Barbee, respondent herein, contended, and both the commissioner and the trial court found with her, that she was a creditor of her husband and of the community estate in the amount of approximately ten thousand dollars; and that the conveyance by Mr. Barbee to her of the home place was merely a preferential payment by a debtor to a creditor, and as such not subject to attack in such a proceeding as this. She contends that the property was reasonably worth no more than nine thousand dollars; and that she, during her husband's lifetime, had loaned to him, and through him to the marital community, different sums of money, which were her own separate property aggregating twelve thousand dollars, no portion of which had been repaid to her; and that her husband (while suffering from mortal illness) conveyed to her the property which is the subject of this litigation in settlement of the community indebtedness to her.

It appears from the evidence that respondent and Mr. Barbee intermarried in 1902 and came to the state of Washington from their former home in Iowa in 1905. At the time of Mr. Barbee's death, their family, besides themselves, consisted of two children. As above stated, the property in controversy was purchased in 1906, and shortly after acquiring the same Mr. Barbee built a dwelling thereon and set out an orchard. Later, he engaged extensively in the fruit raising business and acquired other orchard properties. The home was at all times maintained upon the property in controversy.

Respondent's father, a resident of the state of Iowa,

and a man of considerable wealth, who died during the year 1912, during his lifetime advanced to respondent two thousand dollars, for which Mr. and Mrs. Barbee gave their notes. Prior to his death, respondent's father tore the signatures from the notes and made the Barbees a present of the amount represented thereby. Respondent testified that the borrowed money had been turned over to her husband. After the death of respondent's father, respondent testified that she received from his estate money in excess of nine thousand dollars, which she delivered to her husband. Mr. Barbee's bank book is in evidence and bears notations indicating the source of some of the cash deposited, several being marked "Ellen's money," or with words of similar import.

The record contains evidence that Mr. Barbee had several times stated that it was his intention to convey the home property to respondent in payment of the money which the community had received from her.

The following statutes are applicable to the situation here presented:

"A husband may give, grant, sell, or convey directly to his wife, and a wife may give, grant, sell, or convey directly to her husband his or her community right, title, interest, or estate in all or any portion of their community real property . . . Provided, however, that the conveyances or transfers hereby authorized shall not affect any existing equity in favor of creditors of the grantor at the time of such transfer, gift, or conveyance: . . ." Rem. Rev. Stat., § 10572 [P. C. § 1443].

"In every case where any question arises as to the good faith of any transaction between husband and wife whether a transaction between them directly or by intervention of a third person or persons, the burden of proof shall be upon the party asserting the good faith." Rem. Rev. Stat., § 5828 [P. C. § 1421].

These two sections, being in *pari materia,* should be construed together. *Erfurth v. Erfurth,* 90 Wash. 521, 156 Pac. 523.

In the case of *Sallaske v. Fletcher,* 73 Wash. 593, 132 Pac. 648, Ann. Cas. 1914D 760, 47 L. R. A. (N. S.) 320, it was held that creditors whose claims existed at the time of a transfer of property from husband to wife could subject the property conveyed to the satisfaction of their claims. It appeared that the plaintiff's husband, being obligated for a term of months under a lease, assigned the lease in an attempt to release himself from the liability for the payment of future rent. At approximately the same time, he conveyed to plaintiff, without consideration, all the community property owned by plaintiff and himself, there being at the time of this conveyance no rent due upon the lease. Later, the lessor recovered judgment against plaintiff's husband and the community for rent which accrued after the conveyance, and the judgment creditors sought to collect the judgment out of the property which had been conveyed to plaintiff. It was held that the judgment creditors had "an existing equity by reason of the lease at the time the conveyance was made" to the wife, and that the conveyance to her was, as to them, fraudulent and void. The distinction between existing debts and existing equities was pointed out, the latter phrase being defined as "an existing right to future payment, though it be contingent." In the course of the opinion, this court, speaking through Judge Ellis, said:

"It is obvious that under our statute the motive actuating the voluntary conveyance to the other spouse is immaterial. . . . Under such statutes, the act of voluntary conveyance itself is conclusive evidence of fraud. 'The intent is presumed from the act.' "

In the case of *Peterson v. Badger State Land Co.,* 86 Wash. 530, 150 Pac. 1187, this court, in affirming the

superior court's holding that a conveyance from the husband to a corporation, all of the stock of which was owned by his wife, was a transfer for security only, speaking through Judge Chadwick, said:

"The transaction, when taken by its four corners, is a conveyance by the defendant M. M. Brill to his wife. To sustain such a transfer as upon a sufficient consideration, the proofs must be clear, cogent and convincing. The burden is upon the parties asserting the good faith of the transaction. Rem. & Bal. Code, § 5292 (P. C. 95 § 3).

"Under the doctrine of the case of *Smith v. Weed,* 75 Wash. 452, 134 Pac. 1070, and *Sallaske v. Fletcher,* 73 Wash. 593, 132 Pac. 648, Ann. Cas. 1914 D. 760, 47 L. R. A. (N. S.) 320, an existing creditor is one having an 'existing equity.'

"It seems clear to us that appellant has not sustained the burden of proof. The claim now asserted was not treated as a debt at the time the property was conveyed. A part, and possibly all, of the rents had been spent for living expenses of the family and the education of the child, for which the wife was primarily liable (Rem. & Bal. Code, § 5931 [P. C. 95 § 23]); and, granting that the community would be liable for any of the rent money used to pay taxes and interest, there was no attempt then or now to segregate and ascertain the true amount. No note was given or liability acknowledged. The wife was not a witness in her own behalf or on behalf of the appellant, and the husband, who has managed the family affairs before and after the property was conveyed to appellant, confesses his inability to account in any way or to any intelligible degree for the rent money. Whatever claim the wife or appellant may have on account of advances to the community, they cannot avail under the statute and this record as against the claims of one having an 'existing equity.' "

The case first cited, of course, differs from the case at bar in that the transfer to the wife was based upon no valuable consideration, and the case last above cited is not controlling, because the court found as a fact

that the consideration was so disproportionate to the value of the property conveyed as to constitute in itself a badge of fraud. The reasoning of the opinion is, however, pertinent to the facts of the case at bar.

In the case of *Crandall v. Lee,* 89 Wash. 115, 154 Pac. 190, this court, while for technical reasons holding against the creditor who sought to set aside the deed from husband to wife, and reiterating that, because of the statute, a deed from a husband to his wife carries no presumption of fraud, quoted with approval from *Bates v. Drake,* 28 Wash. 447, 68 Pac. 961, the following:

"While it may be true that a conveyance from a husband to a wife is not of itself a badge of fraud, either under the rule of the statute or the general rule cited, it is nevertheless a fact, which naturally awakens suspicion, lends greater weight to other unfavorable circumstances, and will be for that reason set aside upon less proofs of fraud than will a transaction between parties not having the same confidential relation."

This court, in *Fisher v. Ward,* 104 Wash. 589, 177 Pac. 682, held that a transfer of property from parents to their daughter should be set aside at the suit of creditors whose claims were in existence at the date of the transfer. As to the indebtedness from the parents to the daughter, relied upon to support the transfer, the only evidence was that of the daughter, whose testimony was positive and uncontradicted. In the course of the opinion, this court said:

"It seems to us that the transaction has many of the badges of fraud. The debtor, while in failing circumstances and pressed by his creditors, transferred to his daughter his only available resources, and still continued to exercise dominion over the property following its transfer. The transfer was made for an alleged past consideration of a promise to pay $25 per month, upon which not a single monthly payment had been made in a period of five years. The value of the

property transferred was considerably in excess of the alleged claim of the daughter; and, more than this, the proof of the contract indebtedness fell far short of being satisfactory and convincing. While it is true that a failing debtor is privileged to prefer a member of his family to the exclusion of other creditors, it can be sustained only in case of satisfactory proof of good faith and upon a *bona fide* indebtedness to such member. And it is the prevailing rule in this country that the relationship of parent and child is a circumstance which requires a conveyance by an insolvent parent to his child to be subjected to the closest scrutiny. Taking into consideration all the facts shown in the record, we are satisfied that a presumption of fraud is clearly presented by the evidence, and that it has not been satisfactorily overcome by the countervailing evidence. Moreover, the consideration is based upon an alleged promise to pay for the natural services of the daughter as a member of the household, the services being such only as are customarily rendered by a child dwelling under the parental roof and who was otherwise provided with support and maintenance by her parents.''

It is clear under the authorities that the burden rested upon respondent to establish, by clear, cogent and convincing evidence, the good faith of the conveyance to her, and that the deed was made in good faith in satisfaction of a valid indebtedness and not for the purpose of defrauding creditors in whose favor an equity was in existence at the time of the transfer.

While it is beyond question that respondent received considerable sums of money, both from her father during his lifetime and from his estate after his death, her contention that she loaned the sums so received to her husband and the community is supported only by evidence essentially unsatisfactory in its nature.

As above stated, respondent, during her father's lifetime, received from him two thousand dollars, for which she and Mr. Barbee executed their joint notes.

Mrs. Barbee's father later tore the signatures from these notes and returned them to the Barbees. It would seem that this constituted a gift of the notes to the community, rather than to respondent.

Money received from her father's estate was, of course, the separate property of respondent, but her evidence as to the use to which this money was put scarcely supports her contention that it was loaned to her husband or to the community. True, it was deposited by him in the bank, but in a joint account against which respondent could and did draw checks. Respondent never sought nor received any acknowledgment that either her husband or the community was indebted to her, nor did she concern herself with the purposes to which he devoted the money, save she knew that he used it for the benefit of the family. No accounts whatsoever showing any indebtedness to respondent were ever kept, and Mr. Barbee, at the time he executed the deed to respondent, stated that he did not know the amount which he claimed that he owed his wife.

In three separate financial statements made by Mr. Barbee to the bank represented by appellant herein, during the years 1930, 1931 and 1932, Mr. Barbee listed his assets and liabilities, and in no one of these statements included any indebtedness whatever to respondent.

Concerning the transfer itself, respondent testified:

"Q. Just tell the judge the circumstances surrounding that conveyance. A. Well, I had got a lot of money from my folks and he always said he was going to give me that place, that he was going to deed it to me. . . . Q. Now, Mrs. Barbee, after that money had been received and turned over to Mr. Barbee, as you state, did you ever have any arrangement with him about how you were to get that money back at all? A. Nothing, only he said the home place would be

mine, he would deed it over to me. . . . Q. As I understand, this deed was given in return for this money that you had turned over to him? A. Yes. . . . Q. As you gave him each portion of money, did you say you wanted him to pay it back? Did you each time say you wanted him to pay it back? A. No. . . . Q. When did you first ask him to pay you back? A. I didn't ask him; he always told me that was my place, that I should have that place, it was my place.''

While in response to a leading question by her counsel respondent stated that the deed to her was given in consideration of the money which she had turned over to her husband, her testimony, considered as a whole, amounts to little more than a statement that she understood that the home place was to belong to her. Respondent received money from her father's estate over a considerable period of time. Neither she nor Mr. Barbee kept any particular account of these receipts. Mr. Barbee, in the small book above referred to, noted the source of different sums of money which he had received, and among these amounts some items were ear-marked as coming from respondent, but manifestly these notations were made as a part of his general system of keeping memoranda rather than with any idea of setting up an account between the community on the one hand and his wife, as an individual, on the other.

Respondent argues that, because at the time of making the deed the bank here represented by appellant was still doing business, and no assessment on the stock had been levied, appellant is not now in a situation to attack the deed. We are satisfied that, under authorities, this argument is unsound, and that the contingent liability upon the bank stock owned by the community was at the time of such nature as to render the conveyance subject to attack. This argument, of

course, does not apply to the two small items of account above mentioned.

Conveyances between husband and wife are certainly entitled to no greater consideration than conveyances between strangers. One may have sincere sympathy for a widow left with minor children to be educated, and herself without much earning capacity; but at the same time, questions which involve such a situation must be determined according to the established rules of law.

This is apparently not a case in which the parties were, because of lack of education and business experience, ignorant of the fact that some act on the part of Mr. Barbee was necessary in order to vest title to the home place in his wife. He knew that some affirmative act on his part was necessary. Concerning this phase of the case, respondent testified that her husband "said he was going to give me that place, that he was going to deed it to me."

The vesting of community property in one spouse as his or her separate estate always carried with it some possibility of financial loss or trouble to the other spouse. The property becomes liable to separate debts; becomes subject to the sole testamentary disposition of the owner; and, in the case of intestacy, may, upon the death of the owner, vest, in part, at least, in heirs other than the surviving spouse. Where creditors are concerned, husband and wife, therefore, should in all fairness be required to take a definite stand as to the character of their property at the time when, in their opinion, because of contributions of separate estate by one spouse to the community, or for any other reason, such a situation should be met, or when, in their opinion, circumstances render it advisable that the community interest in certain property

be divested and title thereto vested in one spouse, as separate property.

The law does not look with favor upon a situation which is the result of allowing matters to drag along for years until impending death, or financial calamity, or both, as in this case, renders it manifestly for the advantage of the spouses that the community interest in certain property be divested and title to the property vested in one spouse. If respondent had legal rights and desired to assert them, she should have been protected long before the belated deed was executed.

A conveyance from husband or wife to the other spouse, which results in prejudice to the rights of *bona fide* creditors, is strictly scrutinized. The law permits husband and wife to contract freely between themselves. Good faith, however, requires that such contracts be made seasonably and with due regard to the rights of other interested persons. It is, of course, the law of this jurisdiction that a debtor may, under certain circumstances, prefer one of several creditors, but at the same time such a preference is not favored, and the facts which support it must clearly bring the case within the rule.

The three financial statements made by Mr. Barbee and delivered to the bank during the years 1930, 1931 and 1932, for the purpose of procuring loans for which the community was responsible, show that, during those years, Mr. Barbee did not regard the property with which we are here concerned as the separate property of his wife. Assuming for the purpose of argument that these statements do not constitute any estoppel, in so far as the superadded liability on the bank stock is concerned, they are competent evidence, entitled to considerable weight, in connection with the testimony of respondent to the effect that Mr. Barbee had stated that the home place should belong to her.

It is also significant that, in these statements, which should have contained a list of all community indebtedness, no indebtedness to Mrs. Barbee was included.

Examination of the record herein convinces us that the trial court erred in ruling that the deed to Mrs. Barbee vested title to the property conveyed thereby in her as her separate estate.

The judgment appealed from is reversed, with instructions to the trial court to proceed in accordance with this opinion.

GERAGHTY, BLAKE, and MAIN, JJ., concur.

TOLMAN, J. (dissenting) — The rules of law announced by the majority are sound and well established by our previous decisions. In a situation such as is here presented, both by statute law and by judicial precept the burden of proof is upon the wife to establish all of the elements required to show a conveyance in good faith and for a valuable consideration.

In sharp distinction from those cases upon which the majority relies, the valuable consideration was here shown beyond question or cavil. Indeed, it is admitted that Mrs. Barbee received by gift or devise from her father or his estate substantial sums of money clearly her separate property, amply sufficient to create a sufficient and valuable consideration for the conveyance which was made. The majority opinion seems to rest solely upon the supposition that this money so received by Mrs. Barbee was not loaned to the community. That inference, supposition or presumption, in my judgment, is not warranted by the facts shown, and I utterly disagree with it.

In passing upon such a question, we must give weight to common and natural usage and custom between husband and wife, and judge their actions in the light of what might be expected to occur under like

circumstances in any properly constituted marital community. Here, we have a husband and wife living together apparently in harmony and concord, the husband naturally, as well as legally, handling their community business affairs. The wife receives separate money for which she has no immediate need. She hands the money to her husband with no word or act indicating that she is making a gift or relinquishing any right. He uses the money for the benefit of the community, with nothing more than a general promise, more or less implied from the circumstances shown, that she will be protected.

That no note is demanded tends to establish the good faith rather than otherwise. Unless husband and wife are dealing at arm's length or have reason to believe that their acts will be questioned by others, they would hardly think of requiring binding legal obligations from each other. The demanding of a note under the circumstances here shown would tend to impeach the transaction, because those who intend to defraud are always careful to build up legal evidences of title.

The money being handed to the husband to be used for the community, at least made the community liable for money had and received. The legal obligation of the community was clearly to repay the money on demand and not before, and the statute of limitations would not begin to run in favor of the community until demand was made. The wife, having no need of the money and having confidence in her husband, the manager of the community, naturally made no demand, and the husband, feeling his moral and legal obligations to the wife, on his death bed performed only the necessary and honorable act required to protect her and to carry out the understanding upon which both had acted.

The court commissioner who heard and saw the wit-

nesses so found. The trial court confirmed that finding, and, in my opinion, the evidence amply justifies the finding so made.

The judgment of the trial court should be affirmed.