[No. 27108. Department One. June 29, 1938.]

THE FEDERAL LAND BANK OF SPOKANE, *Respondent*, v.
RICHARD STANLEY EGAN et al., *Appellants*.[1]

*Padden & Moriarty, Melvin T. Swanson*, and *Danforth & Davenport*, for appellants.

*Henry R. Newton* and *R. L. Bartling*, for respondent.

[1]Reported in 80 P. (2d) 813.

HOLCOMB, J.—This action was brought by respondent to set aside two conveyances by appellant Richard Stanley Egan, to appellant Lloyd T. Egan, his brother, alleging they were made with the intention of defrauding respondent.

Appellants answered admitting that the conveyances were made, but denied that there was any fraud in their actions, and alleging that the conveyances were supported by a good, valuable, and sufficient consideration. Appellant Richard Stanley Egan cross-complained, setting up an agreement alleging respondent thereby agreed either to bid the full sum due at foreclosure sale or to satisfy any deficiency judgment that resulted, and prayed that the obligation alleged by respondent to be outstanding be declared satisfied. Respondent replied denying the affirmative defense.

The trial court did not disturb one quitclaim deed which was executed December 10, 1935, to effect a more equitable division of the estate of appellants' father, Sylvester Egan; but decided that the property held by appellant Lloyd T. Egan, by virtue of a quitclaim deed dated December 18, 1935, was subject to the lien of respondent's judgment entered in cause No. 256399 in the superior court of King county. The cross-complaint of appellant Richard Stanley Egan was dismissed, and from these adjudications appellants have appealed.

The facts necessary to present the issues raised are these: Appellants' father, Sylvester Egan, and his son Richard came to this state in the spring of 1915 and settled near Kent, while the other son, Lloyd, continued to maintain his residence at Chester, South Dakota, but made numerous trips to visit his father and brother here.

January 10, 1924, Richard and his wife borrowed a sum of money from respondent and executed and de-

livered to it a note and mortgage therefor upon lot 11, section 30, township 22 north, range 5 E. W. M., situated in King county. At the time of the execution of the mortgage, the major physical improvements on the mortgaged property consisted of a house, a milk house, and a barn.

It appears that Richard proved to be a somewhat unsatisfactory debtor. The taxes were in arrears upon the property described in the mortgage, and after a somewhat extended delay, respondent instituted an action to foreclose its mortgage on September 1, 1932. By reason of periodical promises for better performance, respondent extended Richard further consideration and carried the mortgage along between 1932 and 1935 to enable him to put the mortgage in good standing.

In 1935, the father of Richard and Lloyd died. His estate was probated, and a decree of distribution was entered December 16, 1935. By that decree, there was distributed to Richard $550 for services as administrator, $3,650 cash, an automobile appraised at $350, a one-third interest in certain intangible property, an undivided one-third interest in lot 4, block 11, Yesler's First Addition to the Town of Kent, and all right, title, and interest in the southeast quarter of the southeast quarter and of government lot 10 in section 30, township 22 north, range 5 E. W. M. This real property is that which is involved in the conveyance of Richard to Lloyd dated December 18, 1935.

December 7, 1935, Richard moved a house, which he had built upon the mortgaged land subsequent to the execution of the mortgage at a cost not in excess of five hundred dollars, onto the real property distributed to him from his father's estate. December 16, 1935, the same day as the final decree of distribution was entered in his father's estate distributing the property

among three heirs, namely, Lloyd, Richard, and Julia Shafer, a sister, Richard went to Spokane to attempt to obtain an agreement with respondent whereby no deficiency judgment would be taken against him, and conferred there with a Mr. Crowley, an attorney for respondent. Crowley advised Richard that respondent would bid the full amount of the mortgage when the foreclosure came up provided he delivered up to the bank immediate possession, and provided further that he and his wife would execute a so-called "possession agreement." Richard said he would so agree if respondent would lease the property to the present renter for one year. An agreement was prepared by respondent the following day and mailed to Richard, but it was never executed.

It appears that respondent was not informed during the course of the negotiations hereinbefore referred to of the removal of the house from the mortgaged premises; and upon being apprised of the same, Richard having refused to remove the house back to the mortgaged property, respondent advised him that, under such circumstances, no arrangement would be made for not taking a deficiency judgment.

December 18, 1935, Richard executed a quitclaim deed which recited a consideration in the sum of ten dollars whereby he conveyed to his brother Lloyd the bulk of the aforementioned real property which he had inherited from his father.

Both Richard and Lloyd testified that Richard was, in December, 1935, and had been for many years prior thereto, indebted to his brother Lloyd in various sums of money, evidenced by four promissory notes bearing the following dates, amounts, and interest provisions, and that the above mentioned deed was executed to satisfy them:

April      15, 1925    $400, due one year after date, 6% interest;
March       1, 1932     150, due one year after date, 6% interest;
May        15, 1933     965, due one year after date, 6% interest;
January     1, 1934     150, due one year after date, 6% interest.

The several assignments of error in substance raise three questions, namely: Whether the evidence discloses that the deed was executed on December 18, 1935, to discharge a real obligation owed by the grantor to the grantee; whether respondent entered into a binding agreement not to take a deficiency judgment; and whether the trial court erred in refusing to reopen the case or grant a new trial.

It is well settled that the party who seeks to set aside a transfer of real property on the ground of fraud has the burden of proving the fraud which vitiates the transaction. *Siegel v. Kracower,* 144 Wash. 609, 258 Pac. 493, and cases cited.

Appellant relies upon a number of cases which hold that it is not a badge of fraud for an insolvent debtor to prefer one creditor over another, even to the extent of exhausting his property, where the debt is real and the payment actual and adequate. In order that such a conveyance may not be in fraud of creditors, the consideration therefor must not be grossly inadequate, and such a preference must be characterized by an absence of bad faith. *Siegel v. Kracower, supra.*

Whether the consideration reflected the true value of the real property conveyed or was merely nominal, is immaterial if the transaction was made in bad faith, and was not tendered in satisfaction of any real and genuine debt owed by Richard to Lloyd.

While it is true that a failing debtor is privileged to prefer a brother to the exclusion of other creditors, such a preference can be sustained only upon satisfactory proof of good faith and upon the establishment of a *bona fide* indebtedness to such kin. A conveyance of this character between parties so closely related by

blood, when challenged, must be subjected to the closest scrutiny. *Fisher v. Ward,* 104 Wash. 589, 177 Pac. 682; *Butler v. Arnold,* 115 Wash. 204, 196 Pac. 582; *Puget Sound National Bank v. More,* 159 Wash. 5, 291 Pac. 1081; *In re Barbee's Estate,* 182 Wash. 644, 47 P. (2d) 1023.

While the evidence is not free from conflict, the trial court concluded that the evidence of appellants as to the consideration to support the deed on December 18, 1935, was not convincing. The lower court, in reaching this conclusion that the deed was not supported by a meritorious *quid pro quo,* considered a number of the elements involved in the transaction, such as haste in execution, acting in anticipation of suit, advancing large sums of money by cash and not by check according to common business custom, and a number of other facts and attendant circumstances. It would serve no useful purpose to particularize them all here. Suffice it to say that we find that the record contains abundant persuasive evidence to substantiate the conclusion of the trial court.

In *National Surety Co. v. Udd,* 65 Wash. 471, 118 Pac. 347, we said:

"This rule, however, applies with its full force only in cases of a conveyance without consideration, or to a purchaser for a cash consideration paid at the time of conveyance, and not to a case where the consideration is wholly or mainly an antecedent debt. It is the established law in this state that an insolvent debtor may prefer one or more of his creditors even if it exhausts the whole of his property to do so. *McAvoy v. Jennings,* 44 Wash. 79, 87 Pac. 53; *Vietor v. Glover,* 17 Wash. 37, 48 Pac. 788, 40 L. R. A. 297; *Troy v. Morse,* 22 Wash. 280, 60 Pac. 648; *West Coast Grocery Co. v. Stinson,* 13 Wash. 255, 43 Pac. 35. But it must be done in good faith. The debt paid must be real, the payment actual, the consideration adequate. It must not be designed to prevent other creditors ever being paid.

The preferred debt must not be used as a colorable consideration to protect the debtor's property from other claims or to delay or hinder their enforcement. The transfer must not be tainted with any secret trust for the debtor. Bump, Fraudulent Conveyances (4th ed.), §§ 172, 173, 174."

With respect to the affirmative defense interposed that respondent agreed not to take a deficiency judgment, it is clear that a complete, binding, and enforceable contract was not consummated between the parties. The testimony shows that Richard's acceptance of respondent's offer relative to waiving a deficiency judgment was apparently conditioned upon respondent's agreeing to rent the mortgaged property to Richard's tenant, and respondent demanded the delivery of immediate possession by Richard and his wife to respondent to render the proposed agreement effective. Moreover, by the express terms of the unexecuted possession agreement, execution thereof was made a condition precedent to the agreement's becoming effective. Disregarding this provision in the agreement, and conceding that a binding agreement could be concluded although not reduced to writing, there is no doubt that it was the intention of the parties to negotiate further before an agreement was reached.

In *Jammie v. Robinson*, 114 Wash. 275, 195 Pac. 6, we said:

" ' "Where parties are merely negotiating as to the terms of an agreement to be entered into between them, there is no meeting of minds while such agreement is incomplete. Thus, where they intend that their verbal negotiations shall be reduced to writing as the evidence of the terms of their agreement, there is nothing binding on them until the writing is executed." ' "

See, also, *Z System Const., Inc. v. Queen City Imp. Co.*, 160 Wash. 212, 294 Pac. 1003.

■ Finally appellant urges that the trial court erred in not granting a new trial on the ground of newly discovered evidence consisting of testimony of handwriting experts as to the genuineness of the four notes.

In *Libbee v. Handy,* 163 Wash. 410, 1 P. (2d) 312, and reaffirmed in *Smith v. Kneisley,* 175 Wash. 29, 26 P. (2d) 387, we held that, to warrant a new trial on the ground of newly discovered evidence,

" ' . . . it must appear (1) that the evidence is such as will probably change the result if a new trial is granted; (2) that it has been discovered since the trial; (3) that it could not have been discovered before the trial by the exercise of due diligence; (4) that it is material to the issue; (5) that it is not merely cumulative, or impeaching'."

Under the evidence disclosed by the record, the trial court did not abuse his discretion in refusing to reopen the case or to grant a new trial.

The judgment is affirmed.

MAIN, BLAKE, GERAGHTY, and SIMPSON, JJ., concur.