[No. 29168. Department Two. May 9, 1944.]

WASHINGTON STATE HOP PRODUCERS, INC., *Appellant,* v. EUGENE R. RIEL *et al., Respondents.*[1]

[1]Reported in 148 P. (2d) 847.

*Cheney & Hutcheson,* for appellant.

*Sandvig & Walters,* for respondents Riel and Knisley.

*William B. Clark,* for respondent Haas, Inc.

BLAKE, J.—The plaintiff is a co-operative marketing association organized pursuant to the provisions of the Laws of 1921, chapter 115, p. 357, as amended by Laws of 1931, chapter 16, p. 59 (Rem. Rev. Stat., §§ 2878-2909 [P. C. §§ 134-46—134-77]). The defendants Eugene R. Riel and Malvina Riel are members of the association. Lucienne J. Knisley is their daughter.

In 1937, the Riels entered into a marketing agreement with the plaintiff, by which they agreed to deliver to, and market through the latter, "all hops produced, owned, controlled, or possessed by [them]" during the years 1938 to 1947, inclusive. At the time the agreement was executed, the Riels owned a twenty-acre tract of land near Moxee, about fourteen acres of which were in hops. The agreement stipulated that "growers" would "abide by and conform to the articles of incorporation, the by-laws, and all rules and regulations adopted" by the association. Section 9 of by-law IV provided:

"No transfer of property by a member to a spouse, parent, child, brother, sister, or other relative, or by reason of a transfer in trust, nor any other transfer shall relieve a member from his obligations in the marketing agreement, unless such transfer shall have been made for full valuable and adequate monetary or property consideration."

May 11, 1942, the Riels and Mrs. Knisley entered into a contract in which the former agreed to sell, and the latter agreed to buy, the twenty-acre tract. The agreed purchase price was ten thousand dollars, eight hundred of which was paid when the contract was executed. The balance was payable annually "$1000.00, or more, including interest at . . . 6% per annum on unpaid balances [beginning] April 20, 1943." On June 1, 1942, however, Mrs. Knisley paid an additional nine hundred dollars on the purchase price.

On the same day (May 11th), Riel and Mrs. Knisley entered into a contract, by the terms of which the former agreed to "farm and operate the . . . hop farm" for the latter. Riel was to pay all expenses of growing, harvesting, baling, and preparing the hops for market, and was obligated "suitably to store all such baled hops for said Lucienne J. Knisley upon said premises." For these services he was to receive twenty-five cents a pound for "all commercial hops so raised." The terms of the contract were expressly limited to the crop year of 1942.

On June 26, 1942, Mrs. Knisley entered into a contract with defendant John I. Haas, Inc., by which she agreed to sell and deliver to the latter all hops grown on the place in 1942 at forty cents a pound. Haas, Inc., made advances on the contract as follows: $2,400, June 26th; $4,200, August 20th; and $500, September 24th. These advances were paid by check to Mrs. Knisley. She turned the proceeds of the advances over to Riel to be used to defray the expenses of growing and harvesting the hop crop.

Conceiving that the whole transaction was a subterfuge to relieve the Riels from their obligations under the marketing agreement, plaintiff brought this action to set aside the contract for the sale of the land entered into between the Riels and Mrs. Knisley on May 11th, to annul the contract of June 26th between the latter and Haas, Inc., and to compel delivery of the 1942 crop of hops to it, in accordance with the marketing agreement. Upon issue joined, trial was had, resulting in a decree dismissing the action. Plaintiff appeals.

■ The issue presented is solely one of fact, with the burden on respondents to uphold the good faith of the transaction. *Bates v. Drake,* 28 Wash. 447, 68 Pac. 961; *Peterson v. Badger State Land Co.,* 86 Wash. 530, 150 Pac. 1187; *Fisher v. Ward,* 104 Wash. 589, 177 Pac. 682; *In re Barbee's Estate,* 182 Wash. 644, 47 P. (2d) 1023; *Federal Land Bank of Spokane v. Egan,* 195 Wash. 330, 80 P. (2d) 813. For a conveyance from parents to a child which serves as an escape by the former from obligations to third parties naturally arouses suspicion and is subject to the closest scrutiny.

■ As we view the record, decision of the case must ultimately turn on the credibility of the testimony of the Riels and Mrs. Knisley. For they stoutly maintained the good faith of the transaction and the court believed them in face of valid inferences to the contrary which could be drawn from the admitted facts. The sale of the hops to Haas, Inc., was upon a rising market and at a price that the Riels could, at the time, hardly have hoped to get from the appellant. Riel remained in possession of the property, operated it, and harvested and marketed the crops just as he had done in previous years.

Taking the contracts of May 11th at their face value, however, he was in possession as agent of Mrs. Knisley, and, taking his, Mrs. Riel's, and Mrs. Knisley's testimony at face value, there was substantial reason for that arrangement. Mrs. Knisley was a widow. She was, and had been for a considerable length of time, employed at a very lucrative wage in a war industry. She was expecting to meet payments on the contract of purchase from her surplus earnings and profits from crops raised on the land. There are other facts, though more or less in dispute, that tend to refute an inference of bad faith in the transaction. The Riels had the property up for sale at a price of ten thousand dollars for some time prior to the transaction with Mrs. Knisley. The latter, before entering into the contract to buy the land of her parents, had looked at other farm properties with the view of buying. (While evidence to this effect was received over appellant's objection, no error is assigned on account of its reception.)

The purchase price of ten thousand dollars, we think, represented the fair market value of the property, although appellant contends it was grossly inadequate; in any event, there is abundant unimpeached testimony as to the adequacy of the purchase price. Finally, the payments of eight hundred and nine hundred dollars made by Mrs. Knisley on May 11th and June 1st, respectively, constituted a very substantial percentage of the entire purchase price. That she made those payments, we have not the slightest doubt.

They were made from the proceeds of her late husband's life insurance and "gratuity pay"—he having died of wounds received while in service on the U. S. S. Marblehead.

Although we have given the testimony of Mr. and Mrs. Riel and Mrs. Knisley the severest scrutiny, yet we are unable to lay hold of anything tangible that would warrant us in making a different appraisal of their credibility as witnesses from that made by the trial court. Inherent in its decree is the court's acceptance of the truth of their testimony. Accepting their testimony at its face value, we think they sustained the burden of maintaining the good faith of the transaction.

Decree affirmed.

SIMPSON, C. J., MILLARD, ROBINSON, and MALLERY, JJ., concur.

